SPURLOCK, *Plaintiff in Error*, v. THE MISSOURI PACIFIC RAILWAY COMPANY.

1. **Railroad** : ACT INCORPORATING PACIFIC RAILROAD : TAX CERTIFI-CATES : SUBSCRIPTION BY COUNTY TO STOCK, PAYMENT OF. Under the act of March 12, 1849 (Acts, p. 219), incorporating the Pacific Railroad, and the amendatory act of March 1, 1851 (Acts, p. 268), a taxpayer was not entitled to have his tax certificates converted into stock in the railroad company until the subscription made by the county had been paid in full. (Affirming *Spurlock v. Railroad*, 61 Mo. 319).

2. —— : —— : —— : ——. The defence that the subscription was not paid in full by the county held, as available in an action in equity to subject the property in the hands of a purchaser. to an equitable lien for the amount of said stock, as it was in an action against the original corporation for damages for the value of the stock demanded.

3. —— : —— : —— : ——. Under the above acts incorporating the Pacific Railroad and amendatory thereto, it is the certificate of stock and not the collector's tax receipt, which is made assignable and convertible into stock. Where one does not show that any certificates for taxes paid were ever issued to him or to the taxpayers, he presents no right to have the railroad to issue its stock to him.

4.   Corporation : STOCKHOLDER.   While a stockholder in a corpora-
tion has a right to participate in the profits, he cannot be said to be
a joint owner of the property of the corporation.

*Error to Hickory Circuit Court.*—HON. BENJAMIN V.
ALTON, Judge.

AFFIRMED.

*James P. Ross* for plaintiff in error.

(1)   Improvements and disbursements made for the
benefit of joint owners are a lien on the property.
Story's Eq. Jur., sec. 1234.   "The property of corpo-
rations is held in trust for the creditors, and may be pur-
sued by them into whosesoever hands it may come, as
well after as before dissolution, unless it may have come
to the hands of a *bona fide* purchaser.   Upon like ground
the capital stock of an incorporated bank is deemed a
trust fund for all the debts of the corporation."   Story's
Eq. Jur., sec. 1252.   And this is a remedy which can
be attained only in a court of equity.   *Ibid.; Sanger v.
Upton*, 1 Otto, 56.   (2) The deed of the master in chan-
cery to James Baker is void on its face.   The instrument
on its face shows that the whole proceedings were set on
foot and suit instituted with the fraudulent intent to
deceive and cheat small creditors and stockholders out
of their debts and stock.   (3) The defendant is not a
*bona fide* purchaser.   The order of sale put it on inquiry
for debts, liens and stockholders.   This suit was pend-
ing in 1874, when the mortgage was given and the sale
was made.   As the defendant's agent, James Baker,
had notice of plaintiff's demand, the plaintiff also had
notice.   As the defendant holds only by quit-claim deed,
it holds subject to all prior equities.   (4) The Pacific
Railroad had no right to declare plaintiff's stock for-
feited in 1871 on a demand made in 1866.   The company
had no right to recall more than ten per cent.; also the

lapse of time was too great from demand in 1866 to sup-
posed forfeiture in 1871 ; and was a judicial act, which
could not be conferred on defendant, but which should
have been, if at all, by suit, and the stock sold.     See
Acts, 1849, p. 220, sec. 6.     The law provided a remedy
by mandamus against counties. See Wag. Stat., p. 306,
sec. 22.     This section is found in the acts of 1853, and
Revised Statutes, 1855 and 1865.     It could not be ex-
pected of counties to levy and collect taxes on a call of
thirty days, hence a different remedy as to them.   (5) The
case reported in 61 Mo. 319, is not a bar to this suit.
*Sweet v. Maupin*, 47 Mo. 323 ; *Clemens v. Murphy*, 40
Mo. 121.     To constitute a bar the pleadings in the first
action must have been sufficient to entitle plaintiff to a
recovery.     *Taylor v. Larkin*, 12 Mo. 103 ; *Bell v. Hoag-
land*, 15 Mo. 360.     A judgment on demurrer which does
not reach the merits is no bar.     *Wells v. Moore*, 49 Mo.
229.     A judgment of non-suit is no bar.     *Tattersall v.
Hass*, 1 Hill, 56.     So, if the action is premature.     *Wil-
cox v. Lee*, 26 How. 418.

*T. J. Portis* for defendant in error.

(1)   The court did not err in sustaining defendant's
demurrer to the evidence.     (2) The plea of *res judicata*
was fully sustained.     *Spurlock v. Railroad*, 61 Mo. 319.
(3) The twenty-five thousand dollar subscription was an
entire thing, and payments were all made upon install-
ments called for by the board of directors ; these calls
were not upon any particular shares ; there was no sep-
aration admitting of full payment for any less number
of shares than the whole, and, therefore, the county was
still indebted to the Pacific Railroad Company when
the demand for the transfer of the shares was made, and
the company had the legal right to refuse to make the
transfers demanded.     *Spurlock v. Railroad*, 61 Mo. 326 ;
*Ins. Co. v. Goodfellow*, 9 Mo. 149 ; *Mechanics Bank v.*

*Bank,* 45 Mo. 513.   (4) This defendant never had any-
thing to do with Morgan county's said subscription.
As the purchaser of the railroad and property of the
Pacific Railroad, it did not acquire its stock or the right
to collect unpaid balances due thereon, nor did it become
liable, legally or equitably, to issue stock to any one
entitled thereto, of said Pacific Railroad.   Those are
things with which this defendant, as purchaser, as afore-
said, never had anything to do, and for which it can in
no way be made liable.   Plaintiff has sued the wrong
company.

BLACK, J.—In November, 1853, Morgan county sub-
scribed twenty-five thousand dollars to the capital stock
of the Pacific Railroad.   Various calls of ten and twenty
per cent. each were made from 1854 to 1857, in all, em-
bracing the entire subscription.   Payments on these
calls were made from 1854 to 1859, but none were made
thereafter.   It appears taxes were levied and collected
upon the taxable property in the county to raise money
to make such payments as were in fact made.   In 1868
the plaintiff procured an order to be made by the county
court, which recites that he presented to the court trans-
fers of certificates given for the payment of special taxes
amounting to thirteen thousand five hundred dollars,
accompanied by a petition of said taxpayers, praying
the court to give him certificates to the end that they
might be converted into stock of the company ; and
thereupon it was ordered that the clerk make and de-
liver to him such certificates of transfers as would
enable him to obtain thirteen thousand five hundred
dollars of stock in the Pacific Railroad in his own name.
In 1867 the court appointed Anthony agent to make a
transfer of shares to that amount to Spurlock, on the
books of the company.   Armed with these two orders of
the county court, the plaintiff demanded of the company
that it allow one hundred and thirty-five of the two

hundred and fifty shares, standing in the name of the county, to be transferred on its books to him, and that it issue to him a certificate of stock therefor, all of which was refused. Thereupon the plaintiff brought his suit for damages for the value of the stock so demanded. Upon the trial the plaintiff took a voluntary non-suit with leave, etc., and brought the case to this court, where the judgment of the circuit court was affirmed. 61 Mo. 323.

In November, 1876, the plaintiff commenced this suit in equity, against the Missouri Pacific Railway Company, a different corporation. He was again defeated and brings the case here by writ of error. He now alleges and shows that the property and effects of the Pacific Railroad were sold in 1876 to James Baker, under a decree of the United States Court, foreclosing a mortgage made thereon by that company, and that Baker conveyed the same property to this defendant. He now claims that the whole subscription was paid in full; that the payments were made to the contractor and by him used in building the road; that the Pacific Railroad is insolvent, and that the property was sold under the foreclosure decree, subject to equitable liens. The theory of the petition seems to be that he, plaintiff, has, and is entitled to have enforced an equitable lien for thirteen thousand five hundred dollars.

1. The evidence of Mr. Monroe shows that he was agent of Morgan county from the date of the subscription until 1860. As such agent he did not vote the stock, at the elections for directors, because the county was always in default in the payment of the calls, and, therefore, under the charter and by-laws not entitled to vote. He attended the election held in the spring of 1859, and found the county had appointed another agent for that election, who had voted the two hundred and fifty shares of stock, when he objected because of the non-payment of the calls. The secretary, who was one

of the judges of the election, showed him that the books had been balanced. Monroe then demanded a certificate for the entire stock for the county, but was put off until the next day, when the secretary stated that he had been defeated at the election and had no time to issue the certificate. Thus it appears some scheme had been resorted to, making it appear for the time that the subscription had been paid, to the end that the stock should be voted. But the evidence of this same witness shows that the county was always behind in the payment of the calls. The other evidence also shows conclusively that only sixteen thousand or seventeen thousand dollars was ever paid on the subscription.

The Pacific Railroad was incorporated by the special act of March, 1849 (Acts of 1849, p. 219), which act was amended in 1851 (Acts of 1851, p. 268). Section 8, of the amendatory act, provides that when payment for the stock of any subscriber shall be fully paid the president, etc., shall deliver to him certificates of stock for the amount of stock belonging to him; also that all assignments of shares partially paid in shall be entered on the books of the company, but such assignment shall not exempt the assignor from payments due or to become due upon the stock. In view of this section, a by-law of the corporation, and certain sections of the act of March 24, 1853, it was distinctly ruled, when the former case was here, that a taxpayer was not entitled to have his tax certificates converted into stock until the subscription made by the county had been paid in full. The by-law and statutes are set out in the former opinion, and need not be copied here. The ruling goes upon the ground that in all cases the particular shares, for which a certificate of stock is asked, must be paid in full before a certificate can be of right demanded; that the payments made in the present case were but partial payments upon the whole subscriptions, and cannot be made to apply to any particular share or shares so as to leave

them paid in full.   Assuming that the plaintiff acquired whatever rights the taxpayers had, still his present suit must fail.   His right to recover now, as when the former case was here, is based upon the wrongful refusal of the Pacific Railroad to give to him a certificate of stock.   If he was not entitled to a certificate when demand therefor was made, then he had no cause of action against the Pacific Railroad, and if he has no cause of action against that company, then surely he has no demand which he can enforce as an equitable lien against the property in the hands of this defendant.   The defence that the subscription was not paid in full by the county is just as conclusive in this case as it was in the former one.

To so much of the foregoing opinion as asserts that these taxpayers, upon the production of proper certificates for taxes paid, are not entitled to a stock certificate until the whole subscription is paid, I dissent.   The act of February 24, 1853 (Laws, p. 121), entitled "An act to authorize the formation of railroad associations, and to regulate the same," for the first time gave persons a right to convert their tax certificates into stock.   That act is a general law, and many of its sections have no application to corporations previously created by special acts ; this is so as to the eighth section, upon which some reliance is placed in the former opinion.   Other sections are made to apply to corporations organized under that or any other statute.   By section 29, the county court of any county may subscribe to the stock of any railroad company organized under that or any other law, and may pay for the stock by the issuance of bonds or by taxation.   Other sections give the county power to pay the subscription out of the internal revenue fund, or by the sale or mortgage of its swamp lands.   If a part only is thus paid, the balance may be paid by taxation. The thirty-first section declares that, for all such taxes, levied and collected for railroad purposes, the county

court shall cause to be issued to the person paying such special tax a certificate, which is made assignable and convertible into stock, "whenever presented in amounts equal to one or more entire shares of the stock of such railroad," the transfer to be made on the books of the company by an agent of the county appointed for that purpose in conformity with the by-laws of the company, and when such transfer is made, it is made the duty of the company to issue a certificate of stock to the person entitled thereto; "*provided* that no such certificate of stock shall issue upon such transfer, unless the full amount of the par value thereon shall have first been paid to the railroad company, by the county court or city council; and, *provided further*, that the total amount of stock certificates so to be issued shall not exceed the amount of the subscription made by such county or city."

Now it has been held competent for the legislature to make this section apply to the Pacific Railroad, though previously created by a special act. *Mastin v. Railroad*, 83 Mo. 634. This section of the statute, therefore, entered into and constituted a part of the contract of subscription. The stock paid by special taxation is not the property of the county. To the extent it is paid by taxation, it is the property of the taxpayers. It is held by the county in trust for them. When not paid for by taxation, it is conceded the subscriber, whether an individual, or county, or city, would not be entitled to a stock certificate until the whole subscription is paid. But when paid by special taxes, the law under which the subscription was made, distributes the stock to those who pay the taxes. They are entitled to their shares of stock *whenever* tax certificates are presented "in amounts equal to one or more entire shares of stock." The proviso is entirely consistent with this, for it only contemplates that the shares of stock to be issued from time to time, shall not exceed the amount actually paid to the railroad company. Payments to

the tax collector is not sufficient. It must also be made by the court to the company. This section, to my mind, taken in its entire scope, means that the taxpayer is entitled to his certificate of stock upon the production of the proper tax certificates, and upon showing that the company had received the money, whether the whole subscription has been paid or not. Any by-law to the contrary must yield to the statute.

2. But there are other reasons why the plaintiff cannot recover in this action. The statute provides that the county court shall cause to be issued to the person paying a special tax a certificate, and declares what it shall state. It is this certificate and not the collector's receipt which is made assignable and convertible into stock. In 1868, when the order of the court was made, the appointment of an agent to transfer the stock on the books of the company was not required or authorized ; the secretary of the company was authorized and required to make the transfer. G. S., 1865, sec. 19, p. 338. Now the plaintiff has failed to show that any certificates for taxes paid were ever issued to him or to the taxpayers. He produced no such evidence. He, therefore, shows no right whatever to have or demand the stock in question.

3. But waiving all want of proper evidence of his right to the stock, and assuming that he has a cause of action at law against the Pacific Railroad, the question still remains : Has he an equitable lien upon the property of this defendant? This lien, it seems, is claimed on the principle that a lien " results to one joint owner of any real estate, or other joint property, for repairs and improvements made upon such property for the joint benefit, and for disbursements touching the same." Story on Eq., sec. 1234. The plaintiff was not a joint owner with the corporation in the property real or personal, belonging to it. Nor were those through whom he claims. The stockholder has a right to participate in

the profits, but he cannot be said to be a joint owner of the property of the corporation. Again, conceding that the taxes collected were paid to the contractor for building the road bed, still the payments were thus made as a matter of convenience. They were, in law, payments made to the Pacific Railroad on the subscription contract. The plaintiff could not recover back the money paid on the subscription. His cause of action is for a wrongful refusal to issue to him stock, and the damages would be the value of the stock at the time of the demand and refusal, not the amount paid. It is impossible to see how he can have an equitable lien for such damages, even as against the Pacific Railroad.

Many other questions are presented in the briefs, but they need not be considered. The judgment is affirmed. Norton, J., concurs in the result. The other judges concur.

NORTON, J., CONCURRING.—I simply concur in the conclusion reached, not wishing to be committed to the principle announced, that a taxpayer is not entitled to a certificate of stock on production of certificate showing that he has paid as much as one hundred dollars.