EDITH JOHNS COTTEN, Executrix of the Will of
Jesse Tyson.

*vs.*

JULIA McH. TYSON, et als.

*Corporations and stockholders*: title to property; assets of cor-
porations.  *Trustees*: construction of instrument.
*Fees*: chargeable to the firm.

Where a trustee's administration of the estate, in view of a
conflict of interests, can not be safely completed without judi-
cial construction, the costs of the necessary proceedings are
properly chargeable to the fund.                          p. 607

A stockholder, as such, is not the owner of any portion of the
property of the corporation, and, apart from his stock, has no
interest in the assets capable of being assigned.    ·    p. 604

Where a person is the owner of all the capital stock of a
corporation, his acts in reference to the property bind the cor-
poration.                                                p. 604

But, in general, a stockholder, while retaining his ownership,
can not assign the interest represented by his stock in any par-
ticular claims of the corporation's assets.              p. 605

Certain *cestui que trusts* charged their trustee with having
diverted the funds of a solvent corporation, of which he was the
president and in which their estate, as well as said trustee indi-
vidually, were the principal stockholders, into certain insolvent
corporations, in the stock of which latter both were also inter-
ested, thereby incurring a large loss to the stockholders of said
solvent corporation.  In an agreement between the said *cestui*

*que trusts* on behalf of their estate and their trustee, the latter agreed to pay the former a large sum of money to compensate them for the losses so incurred by them, and the former agreed to assign to him in consideration thereof "all the interest, estate, title, claim and demand of every description" of their estate "in the capital stock and shares of stock, property and assets of every description" of said insolvent companies; said estate, however, in which said *cestui que trusts* were interested, to retain its stock in the solvent corporation. Shortly afterwards the entire stock of the solvent corporation was sold, but the original holders thereof individually reserved and retained all of their claims (based on the advances so made by the said trustee as its president) against the insolvent corporations. *Held,* that the agreement did not operate as an equitable assignment, on the part of the estate in which said *cestui que trusts* were beneficially interested, to assign said estate's interest in claims originally due by said insolvent companies to said solvent company.　pp. 605, 606

*Decided November 12th, 1913.*

Appeal from the Circuit Court of Baltimore City (BOND, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Richard H. Pleasants* and *Alfred S. Niles,* for the appellant.

*J. Wallace Bryan* and *J. Southgate Lemmon* (with whom were *Lemmon* and *Clotworthy* on the brief), for the appellees

URNER, J., delivered the opinion of the Court.

By the will of Isaac Tyson, Jr., who died in 1861, a trust as to one-eighth of his residuary estate was created for the

benefit of his son, Richard W. Tyson, for life with power of disposition as to the estate in remainder. The execution of the trust was committed by the will to Jesse Tyson and James W. Tyson, two other sons of the testator. In 1873 Richard W. Tyson died leaving a will by which he devised and bequeathed his estate, in connection with that over which he was given the right of appointment by his father's will, to his two brothers just named in trust for the benefit of his wife, Julia McH. Tyson, for life and after her death for his children and descendants. The estate of Isaac Tyson, Jr., included certain mines and mining privileges from which were obtained the ores used in a manufacturing business conducted by the testator and his son Jesse as equal partners under the firm name of Jesse Tyson and Company. There were other assets, real and personal, of large value. The trust estate eventually set apart for Richard W. Tyson under the terms of the will amounted to approximately $109,000. It was not segregated from the general estate of the testator until some years after his death. In the meantime the estate had been kept intact and the mining and manufacturing enterprises to which we have referred were continued, as authorized by the will, for the benefit of the various trusts and intrests created by its terms. The division for which the will provided was made in 1868 after the trustees had organized two corporations, under the respective name of the Baltimore Chrome Works and the Tyson Mining Company, to which the interests of the estate in the industries mentioned were conveyed in exchange for due proportions of their capital stock. The assets allotted at that time to the Richard W. Tyson trust consisted of two warehouses, appraised at $29,000.00; a mortgage of $5,000.00; 375 shares of the Baltimore Chrome Works, transferred at their par value of $37,500.00; and 625 shares of the Tyson Mining Company, having an estimated value of $37,500.00. This distribution did not cover the entire interest of the trust in the residuary estate of the testator, as there were undivided assets to the

amount of about $126,000.00 which remained in the custody of Jesse and James W. Tyson as general trustees under the will. The estate thus left undisturbed included an investment in the Mineral Hill Mining Company, and it later acquired an interest in the Elizabeth Mining Company. Both of these corporations were financed mainly by the Tyson Mining Company with funds advanced by the Baltimore Chrome Works; and all four companies were under the control and management of the trustees in their individual capacity.

After the death of Richard W. Tyson in 1873 the separated trust estate we have described passed under his will to the same trustees for the objects already indicated. In 1900, Mrs. Julia McH. Tyson, as the life beneficiary, caused an examination to be made of the accounts relating to the administration of the trust and of the undivided estate of Isaac Tyson, Jr., and to the affairs of the corporations in which the estates held investments. The investigation was subsequently, with the concurrence of the trustees, placed in the hands of expert accountants. During the progress of their work James W. Tyson died, and the Safe Deposit and Trust Company succeeded him, as co-trustees of Jesse Tyson under both wills, by appointment of the Court below, whose jurisdiction had been invoked for the trusts in the early period of their existence. As a result of the investigation a claim on behalf of the Richard W. Tyson trust was preferred against Jesse Tyson and the estate of his deceased co-trustee for a proportionate part of the estate of Isaac Tyson, Jr., with which they appeared to be still chargeable, and for losses alleged to have occurred through mismanagement of the trust properties and interests. After some negotiations between Jesse Tyson and those entitled under the will of Richard W. Tyson they entered into an agreement in writing dated June 2nd, 1902, described in its caption as a "Memorandum of terms of settlement of all claims of the widow and children and grandchildren of Richard W. Tyson, and of the trustees under his will, against Jesse and James W. Tyson, as executors and

trustees under the will of Isaac Tyson, Jr., and under the will of Richard W. Tyson, and individually, and in every other capacity, and of all claims of Jesse Tyson and the executors of James W. Tyson against them, and against the estate of Richard W. Tyson."

The agreement provided for a settlement to be made by Jesse Tyson to the amount of $90,625.00, upon which interest should begin to run as of June 1st, 1902, and as to $18,000.00 of which it was contemplated that he should receive contribution from the estate of James W. Tyson, deceased. It was agreed also that "The estate of Richard W. Tyson shall transfer, assign and convey to Jesse Tyson, to be received by him as his own property, all the interest, estate, title, claim and demand of every description of said estate of Richard W. Tyson in the capital stock and shares of stock, property and assets of every description of the Tyson Mining Company, the Mineral Hill Mining Company and of the Elizabeth Mining Company, and in the Elizabeth Mines, appurtenances and ores, and in all mines and mining rights belonging to the estate of Isaac Tyson, Jr., or to his executor or trustee, and in all the undistributed estate of Isaac Tyson, Jr., (excepting Rosemont Farm), and in all undivided cash claimed to belong to the trust estate of Richard W. Tyson or to the estate of Richard W. Tyson." It was stated in the agreement that upon its performance the trust estate of Richard W. Tyson would consist of the obligations of Jesse Tyson given under the terms of the settlement, certain real estate investments, and "the 375 shares of stock of the Baltimore Chrome Works, now held by the trustees of said trust estate."

Subsequently to the date of the agreement, but before the settlement for which it provided was consummated, the trustee under the will of Richard W. Tyson, after obtaining authority from the Court for the purpose, joined with the other stockholders of the Baltimore Chrome Works in the sale of the entire capital stock of the corporation. There were expressly reserved from the sale certain assets of the Chrome

Works, including its accounts and claims against the Tyson Mining Company and the Elizabeth Mining Company. These assets were to be transferred to a trustee selected by the vendor stockholders. The transaction was duly reported to the Court and was later ratified by the same order which approved of the agreement of June 2nd, 1902, for the settlement of the claims of the Richard W. Tyson estate against the original trustees. The assets reserved from the sale of the stock of the Baltimore Chrome Works were assigned by that corporation and its stockholders to the Safe Deposit and Trust Company for conversion into cash and distribution to the vendors of the stock according to their respective interests. The stock held by the Richard W. Tyson trust amounted to one-eighth of the whole issue which passed under the sale. In the assignment of the reserved assets it was accordingly provided that one-eighth of their proceeds should be paid to Jesse Tyson and the Safe Deposit and Trust Company, trustees under the will of Richard W. Tyson. This stipulation was followed by the statement that the distribution should be "subject to the legal operation and effect of an agreement dated June 2nd, 1902, between Jesse Tyson and the beneficiaries under the will of Richard W. Tyson and others, the said Safe Deposit and Trust Company and the devisees of Richard W. Tyson insisting, however, that such agreement does not in any aspect or to any extent whatever affect their right to one entire eighth part of the property hereby covered without deduction or abatement."

In 1909 the Safe Deposit and Trust Company, by virtue of the assignment just mentioned, received dividends aggregating $105,329.94 on the claims of the Baltimore Chrome Works against the Tyson Mining Company and the Elizabeth Mining Company. The share of this fund to which the Richard W. Tyson trust was entitled, after the payment of commissions and other expenses, was $12,956.43, which has been increased by the addition of interest to $13,758.68. During the year in which these dividends were received, the

trust under the will of Richard W. Tyson was terminated by the death of Mrs. Julia McH. Tyson, the beneficiary for life, and shortly afterwards the Safe Deposit and Trust Co., as the sole remaining trustee, filed a petition in the Court below seeking direction as to the final distribution of the estate. The petition referred specifically to the amount realized for the estate from the reserved assets of the Baltimore Chrome Works, which were stated to be subject to the right, if any, which the executrix of the will of Jesse Tyson, then deceased, might have to the proceeds under the terms of the settlement of June 2nd, 1902. The executrix was made a party defendant and answered the petition, contending that the interest reserved to the Richard W. Tyson estate, as a stockholder of the Chrome Works, in the assets excepted at the time of the sale of the stock, was transferred to Jesse Tyson by the assignment for which the agreement provided, covering "all the interest, estate, right, title, claim and demand of every description" held by the assignor estate "in the capital stock and shares of stock, property and assets of every description" of the Tyson Mining Company and the Elizabeth Mining Company. This contention was answered and opposed by the Safe Deposit and Trust Company as trustee under the will of Richard W. Tyson. The auditor to whom the case was referred, upon a careful consideration of the oral and documentary evidence offered, reported adversely to the claim of the executrix, and awarded to the trustee the balance of the fund remaining for distribution after allowance had been made for the costs of the proceeding. Exceptions to the report were filed by the executrix, but as they applied only to the disposition of the residue of the fund, the audit was in other respects formally ratified. Upon final hearing the Court below overruled the exceptions, confirmed the distribution as reported and charged upon the executrix the costs of the litigation. From this order the exceptant has appealed.

It is apparent from the record that the title to the fund in controversy must depend upon the construction of the agree-

ment of June 2nd, 1902, in the light of the conditions then existing. The settlement as eventually and actually made was by express reference based upon the terms of the original agreement. When it was executed and delivered the sale of the stock of the Baltimore Chrome Works was not contemplated, and there was accordingly no provision for the reservation of the assets from which the money now in question has been derived. In order, therefore, to sustain the contention of the appellant, we should have to hold that the assignment of all the right, title and interest held by the Richard W. Tyson trust in the capital stock and assets of the Tyson Mining Company and the Elizabeth Mining Company effected the transfer of the interest of the estate as a stockholder of the Baltimore Chrome Works in the claims of that corporation against the mining companies. This view would necessarily disregard the accepted theory of a stockholder's status with respect to the corporate property, and it is opposed to the evident intent of the parties as expressed in the agreement.

The principle is elementary that a stockholder as such is not an owner of any portion of the property of the corporation, and apart from his stock has no interest in its assets which is capable of being assigned. *De la Vergne Refrigerating Machine Co.* v. *German Savings Inst.,* 175 U. S. 40; *Humphreys* v. *McKissock,* 140 U. S. 304; *Wheelock* v. *Moulton,* 15 Vt. 519; *Spurlock* v. *Missouri Pac. Ry. Co.,* 90 Mo. 199; *Williamson* v. *Smoot,* 7 Martin (La.), 31; *Mickles* v. *Rochester City Bank,* 11 Paige, 118; *Burrall* v. *Bushwick R. Co.,* 75 N. Y. 211; *Sellers* v. *Greer,* 172 Ill. 549; *Home Fire Ins. Co.* v. *Barber,* 67 Neb. 644; 10 *Cyc.* 373-4; *Thompson on Corporations,* 2nd Ed., Vol. 4, sec. 3465.

Where one person is the owner of all the capital stock of a corporation, it has been held bound by his acts in reference to its property. *Pott* v. *Schmucker,* 84 Md. 552; *Swift* v. *Smith,* 65 Md. 428; *Hoffman Steam Coal Co.* v. *Cumberland Coal and Iron Co.,* 16 Md. 456. But it is entirely clear upon

reason and authority that a stockholder of a corporation, while retaining his stock ownership, cannot assign the interest represented by his stock in any particular class of the corporate assets. Such an attempted alienation would not only be incompatible with the retention of title to the stock in the assignor, but its enforcement would be altogether impracticable. The stockholder himself could not require the corporation to segregate and distribute a specific portion of its property, and certainly he could not create and confer such a right by assignment.

The agreement to be construed in this case, however, does not even purport to provide for the transfer of an interest in the corporate assets of the Baltimore Chrome Works from which the funds in controversy have been realized. It refers only to the assignment of the interest of the estate in the stock, property and assets of *other companies,* in which the former corporation was concerned simply as an unsecured creditor. The description of the subject-matter of the transfer, therefore, could not be held to embrace such a right as the one here asserted. Even if a stockholder could effectively assign an interest in the *choses in action* of his corporation, such a result could obviously not be accomplished by a mere assignment of his interest in the assets of its debtors.

There is a stipulation in the memorandum of settlement to the effect that Jesse Tyson, the retiring trustee, to whom the assignment was to be made, should not sell his individual stock in the Baltimore Chrome Works without giving an opportunity to the life beneficiary of the Richard W. Tyson trust to sell its stock in that corporation at the same rate. It thus appears affirmatively that according to the understanding of the parties, the interest of the trust as a stockholder of the Balto. Chrome Works should not be affected in any way by the settlement. If the assignment had been intended to have the effect of separating and transferring from the stock of the trust the interest it represented in the large proportion of the assets of the Chrome Works included in its claims

against the mining companies, it would have been absolutely inconsistent and futile to provide for a future sale of this stock upon an equal basis of value with other holdings to which the agreement did not apply.

It is to be further observed that the conditions which brought about the segregation of the assets from which the funds for distribution have been derived did not come into existence until after the agreement of settlement had been executed and delivered. At the time of the agreement the sale of the capital stock of the Chrome Works, with a reservation of the assets in question, had not been proposed or anticipated. If this sale had not been made, or if it had not excepted the designated assets, the issue now before us could not have been presented. It is evident, therefore, that the appellant's claim was made possible only by a contingency which has occurred subsequently to the agreement now invoked and for which it made no provision.

The considerations to which we have thus referred are in our judgment conclusive of the question to be decided, and we can have no hesitation in concurring with the Court below in the view that the assignment made in pursuance of the agreement of settlement did not vest in the assignee any right or interest upon which the claim of the appellant can be sustained.

The appeal also presents for review the direction contained in the order below as to the payment of the costs. It is urged on behalf of the appellant that she ought not to be subjected to this burden, for the reason that the issue involved in the case was raised by petition of the Safe Deposit and Trust Company as trustee, filed for the purpose of having the agreement in question construed and the rights of the respective claimants of the fund determined, and also because the auditor's report, in so far as it charged the costs of the proceeding to the trust estate, was finally ratified without objection by any of the parties interested. It appears from the record that the order ratifying the audit, except as to the

award of the balance for distribution, was passed in June, 1912, and that it authorized the trustee to make the payments of costs as allowed out of the fund reported. The order overruling the exceptions and requiring the appellant to pay the costs was passed in the following January, long after the first order disposing of the costs had become enrolled. It has been noted that when the reserved assets of the Baltimore Chrome Works, after the sale of its capital stock, were transferred to the Safe Deposit and Trust Company, the assignment recognized the existence of a difference of opinion between Jesse Tyson and the beneficiaries of the trust from which he was retiring as to whether he was entitled to the interest of the trust in the proceeds of the assets by virtue of the agreement of settlement. The issue we have had to determine in this case was thus presented upon the face of the instrument under which the Safe Deposit and Trust Company received the reserved assets and reduced them to cash for distribution, and the proceeding to have the question adjudicated was not instituted by the appellant, but by the Trust Company, whose administration of the estate, in view of this conflict of interests, could not be safely completed without a judicial construction of the agreement to which the controversy refers. In view of all these circumstances, we think the costs are properly chargeable against the fund as provided in the audit.

The order under review will accordingly be affirmed as to its ruling upon the exceptions, but it will be reversed as to its disposition of the costs.

> *Order affirmed in part and reversed in part and cause remanded, the costs above and below to be paid out of the fund.*