# THE FIDELITY TRUST COMPANY, A Body Corporate of Maryland,

*vs.*

# ARTHUR P. GORMAN, JR., Chairman, LEWIN W. WICKES and OSCAR LESER, Constituting the State Tax Commission of Maryland.

*Taxation and assessment: appeals; from action of State Tax Commission; questions of law only.*

The appeal allowed by Sections 239 and 245 of Article 81 of the Code to the Baltimore City Court and to the Circuit Courts of the counties from assessments of the State Tax Commission, is only for the purpose of having questions of law involved in the action of the commissioners reviewed by the courts.    p. 340

When the record in the court below presents no question reviewable by that court, its order dismissing the appeal will be affirmed by the Court of Appeals.                p. 343

And (*semble*) the mere fact that a petitioner's property may be assessed unequally as compared with other properties of a similar kind does not justify the assumption that the method adopted by the commission was unlawful, so as to make it present a question of law.                p. 343

*Decided April 9th, 1919.*

Appeal from the Baltimore City Court.   (Bond, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Urner and Constable, JJ.

*Allan C. Girdwood,* for the appellant.

*Ogle Marbury, Acting Attorney General,* for the appellees.

THOMAS, J., delivered the opinion of the Court.

This appeal is by the Fidelity Trust Company, a Maryland corporation, from an order of the Baltimore City Court dismissing its appeal from an assessment of its stock made by the State Tax Commission.

The petition of the company in the Court below alleges, in the first paragraph thereof, that the company appeals from the action of the Commission in assessing its stock for the year 1918 in the manner and amount set forth in the petition, and "charges and alleges" that the action of the Commission in making said assessment "is illegal because unequal and discriminatory." The second paragraph alleges that the company, on or about the 21st of January, 1918, filed with the Commission, as required by law and on the form furnished by the Commission, a full and complete report of all information required by the Commission "together with certificates," and that on or about the 19th day of February, 1918, the Commission made a tentative assessment of the shares of the stock of the company for 1918, and notified the company that said assessment would become final unless cause to the contrary be shown; that according to said tentative assessment the value of the shares was fixed at $308.00 per share, and the total issue of 10,000 shares at an aggregate value of $3,080,000.00, and that this amount, less credits to which the company was entitled under the laws of the State, would be the amount upon which the company would be required to pay for its stockholders State taxes, and city, county and town taxes to the several "taxing units in the State," wherein the shareholders reside, or where the shares may properly be taxed. The third paragraph charges that the company, within the time provided, protested against the proposed assessment "in the manner and amount herein set forth," but that the Commission "paid no consideration to the protest," and on the 10th of April, 1918, assessed the 10,000 shares at $308.00 per share, "or an aggregate of $3,080,-000.00," and notified the company of its action. The fifth paragraph states that the company "now alleges and charges"

that the action of the Commission in assessing the shares of the company in said amount per share "is illegal and void for the following reasons":

> "That in computing the assessable value of shares of corporations subject to assessment on shares the law of Mrayland does not define the method to be used in determining the taxable value, but that the Constitution and laws of the State do set forth that all taxable property in the State shall be placed upon the assessment books and equalized between persons, firms and corporations in all the cities, districts, towns and villages of the State. That in assessing shares of corporations the commission considers several methods in arriving at the assessment and that the commission assesses some corporations by one method and some other corporations by some other method. That, as advised by the commission at the hearing, the methods which may be used are as follows:
>
> "(a) Assessment based on the market value of shares.
>
> "(b) Assessment based on the book or liquidation value of shares.
>
> "(c) Assessment based on capitalization of earnings at a percentage and this percentage is determined by the commission.
>
> "(d) Or assessment based on combination of two or more of these methods, but which means selection of one of the methods."

The sixth paragraph of the petition avers that if the Commission assessed the shares of the company for the year 1918 according to the first of the above methods the assessment at $308.00 per share is illegal and void because the price at which the shares were sold during the year 1917 ranged between $312.00 and $310.00, the last sale being in October, and the market value of all securities was declining during the fall of 1917, and about the first of 1918 the bid price for said stock was $306.00, and within the first ten days of January, "shares were sold at $306.00." The seventh para-

graph charges that in the assessment of shares of other banks, trust companies and corporations, "the same percentage of assessment to the market value has not been applied by the" Commission, "because it will appear that the shares of this corporation have been assessed at a basis of 99.9 per cent. and your petitioner alleges that the percentage of assessment to the value of shares of other corporations is much lower than the percentage in the assessment of this corporation"; that real estate and personal property in the counties and Baltimore City are assessed at a percentage far below the ratio of 99.9 per cent., and that that fact is known to the Commission; that the assessment of the shares of the company at $308.00 produces gross inequality, which inequality is unlawful under the laws of the State, and under "the Constitution of the United States and amendments in that it denies to this petitioner the equal protection of law." The eighth paragraph alleges that if the Commission based the assessment on the book or liquidation value of the stock the assessment is illegal and void because it produces gross inequality when compared with the assessment of shares of other corporations, according to the book or liquidation value of the shares of such other corporations, for that, according to the value of the assets of the company on or about the first of January, 1918, and the report of the company filed with the Commission, the book value of the shares of the company was $246.55 per share, and the assessment of $308.00 per share "represents a percentage of assessment to value of 125 per cent.," and the same ratio of assessment to the book or liquidation value has not been applied by the Commission to shares of other banks, trust companies or corporations, and that said ratio of 125 per cent. is not the same ratio of assessment to value of the real estate and personal property in the counties and Baltimore City, and the assessment of the shares of the company is "far in excess of the ratio of assessment of other persons and corporations." The ninth paragraph charges that if the Commission adopted "the capitalization-of-earning method" in arriving at the assessment of $308.00 per share,.

the assessment is illegal and void because unjust and unequal as compared with the assessment of banks, trust companies and other corporations, because according to the books of the company, and the report of the company to the Commission, the net profits of the company for the year ending the 31st of December, 1917, were $271,477.75, and the assessment of $308.00 per share represents a capitalization at the rate of 8⅞ per cent., and the same rate of capitalization has not been used by the Commission as the basis of capitalization of net earnings of other banks, trust companies and corporations, and that no uniform rate is used by the Commission in arriving at assessment by method of capitalization of earnings; that the rate applied to other corporations for the year 1918 is in excess of 8⅞ per cent.; that capitalization of net earnings at different rates produces gross inequality of assessments, and that the assessment of the company is therefore unjust and unlawful under the laws of Maryland and the Constitution of the United States and amendments thereto.    The tenth paragraph charges that any method used by the Commission in arriving at the taxable value of the shares of the petitioner by a combination of two or more of the methods mentioned is illegal and void because discriminatory, and the result produced is unequal and unjust, "and has not been used by the Commission in arriving at the assessed value of shares of other banks, trust companies and other corporations subject to assessment on shares."    The eleventh and remaining paragraph avers that in 1917 the Commission proposed to assess the shares of the company at $280.00 per share, and that after protest the assessment was fixed by the Commission at $275.00 per share; that the assessment of $308.00 per share represents an increase for the year 1918 over the year 1917 of $33.00 per share notwithstanding the fact that during the year the market value of the shares on the market advanced only five points over the preceding year, and the book value of the stock in 1917 increased $11.14 per share, and could have been increased $1.00 per share more had an extra Red Cross dividend of 1 per

cent. been carried to the surplus; that the earnings for the year 1916 were $251,880.69, and the assessment for the year 1917 of $275.00 per share represents an assessment at 9 1/6 per cent., and the assessment for the year 1918 of $308.00 per share is "unlawful and unjust."

The prayer of the petition is (1) that the assessment by the Commission of $308.00 per share be annulled and set aside, and that the Court "make a legal and proper assessment." (2) That the Commission be required to produce at the hearing the report of the company to the Commission, together with all findings and actions of the Commission "therein"; the "reports of other banks, trust companies and other corporations subject to assessment on shares, showing the sales prices of stock during the year, the book value of stock and the net earnings with the ratio of earnings to assessed value"; the findings and assessments for the year 1918 made by the Commission, and "the ratio of assessment of property to value in the City of Baltimore and in the counties of Maryland," and (3) that the Court "equalize the assessment of the Fidelity Trust Company for the year 1918 with the assessment of other corporations and property in this State."

The transcript of the record of proceedings before the State Tax Commission contains only the report of the Fidelity Trust Company to the Commission for the year 1918, on a form furnished by the Commission, in accordance with the provisions of the Code requiring such reports to be made annually; the notice to the company, dated March 19th, 1917, enclosing copy of proposed assessment of its shares of stock, and advising the company that the same would become final unless sufficient reasons for a change therein be presented within ten days from said date; the notice to the company, dated March 15th, that it would, on March 18th, be granted a hearing "in the matter of its assessment"; a similar notice on March 20th fixing time for the hearing on March 22nd; the notice to the company on March 26th containing the final assessment of its stock; the petition and protest of the com-

pany filed with the Commission on March 28th, alleging that
the assessment was unequal and unfair; was in excess of the
true value, market value and book value of the stock, and that
if the assessment was made by capitalizing net earnings the
basis of capitalization was not fair; and the notice to the
company on April 10th that, after due consideration of its
petition, the Commission had determined to make no change
in the assessment, and would certify it as final.

The record before the Court below consisted of the petition
of the appellant to that Court, the record of proceedings be-
fore the Commission, and a motion of the Commission to dis-
miss the appeal, and the appeal was dismissed by the Court
on the ground that the questions submitted by the petition
were not questions of law but questions of fact.

The appeal to the Court below, and the present appeal
were taken under sections 239 and 245 of Vol. 3, Art. 81 of
the Code, as enacted by the Act of 1914, Ch. 841, and no
question appears to have been made in the lower Court, and
none has been made in this Court, as to the right of appeal
under those sections from the action of the Commission in as-
sessing the shares of stock of a corporation, as distinguished
from appeals from the decisions of the Commission when re-
viewing the action of the County Commissioners of the coun-
ties or the Appeal Tax Court of Baltimore City. Without
stopping to consider how far that question has been disposed
of in the cases of *M. & C. Hyattsville* v. *C. & P. Tel. Co.*,
131 Md. 589, and *Mayor, etc., of Baltimore* v. *German-
American F. Ins. Co.*, 103 Atl. 980, and assuming that the
sections referred to authorize an appeal to the Baltimore City
Court in cases like the present, the question to be determined
here is whether the petition of the appellant in the lower
Court and the record of proceedings before the Commission
presented any question reviewable by that Court.

Section 239, after authorizing any taxpayer, city, town or
village to demand a hearing before the County Commissioners
or the Appeal Tax Court, and after authorizing an appeal,
after such hearing, by a taxpayer, city, town or village from

an assessment by the County Commissioners or Appeal Tax
Court to the State Tax Commission, further provides that
"there shall be an appeal to Court on questions of law only
from decisions of the State Tax Commission to the Court in
that county where the property is situated, if real estate or
tangible personal property, or where the owner resides, if
intangible personal property," and that the State Tax Com-
mission may participate in any proceeding in Court where
any assessment or taxation question is involved. Section 245
provides that on all appeals to the State Tax Commission pro-
vided for in said Act of 1914, the provisions of the Act of
1908, Chap. 167 and of the Act of 1910, Chap. 430, relating
to appeals to the Baltimore City Court and to the Circuit
Court for the several counties, shall continue in force so far
as the same are applicable and not inconsistent with other
provisions "of this sub-title," except that the State Tax Com-
mission shall be substituted for, and exercise the functions
theretofore exercised under said Acts by the circuit courts
for the counties and the Baltimore City Court. This section
then declares that "Appeals from any action of the State Tax
Commission to Court, as authorized by section 239 hereof,
shall be taken within thirty days of such action by a petition
setting forth the question or questions of law which it is de-
sired by the appellant to review," and further provides that
the appeal shall be heard and decided by the Court, sitting
without a jury, and that appeals to Court in Baltimore City
shall be to the Baltimore City Court, and for a further appeal
to the Court of Appeals.

Section 241 of the Act of 1914, Chap. 841, being section
242 of Vol. 3, Art. 81 of the Code, declares that the State
Tax Commission shall have power "to provide a system for
hearings on petitions filed before it," and shall adopt such
rules "of proceedings, manner of taking testimony and argu-
ment and such regulations in regard to notices of assessment,
hearings and appeals as it may deem proper," and further
declares that the Commission, or any member thereof, shall
have the power to compel the attendance of witnesses, and

may require the production of books and papers "before it or him," and may examine witnesses or cause witnesses to be examined under oath, "which any of its members may administer."

These sections provide for the hearing of appeals by the Commission, and for the production of evidence, the attendance of witnesses and the taking of testimony at such hearing; for an appeal, *on questions of law only,* from the decision of the Commission to the Baltimore City Court or the circuit courts for the counties, as the case may be, by a petition setting forth the *questions of law* to be *reviewed* by the Court, and for a further appeal to this Court from the judgments of said courts. As the appeals allowed by sections 239 and 245 to the Baltimore City Court and the circuit courts are only for the purpose of having questions of law reviewed by those courts, it is apparent that no evidence is to be taken at the hearing of such appeals, and that the questions of law to be *reviewed* by the courts are those appearing or arising on the record of proceedings before the Commission and set forth in the petition of the party appealing.

There have been several appeals to this Court under the sections referred to. In the case of *Mayor & C. C. of Balto. v. C. & P. Tel. Co.,* 131 Md. 50, JUDGE BRISCOE, speaking for the Court, after disposing of the first question as to the jurisdiction of the Commission to entertain the appeal from the Appeal Tax Court, and after referring to the language of section 238 of the Act of 1914 (sec. 239 of the Code), said: "And it is further provided, by the same section, that there shall be an appeal to Court on questions of law only from decisions of the State Tax Commission." After referring to section 244 of the Act (sec. 245 of the Code), he said further: "It will thus be seen that the Circuit Court (Baltimore City Court) was limited on appeal, by the express terms of the statute, to the consideration of questions of law only presented by the petition, and could not review or pass upon any questions of fact involved in the assessment of the property by the State Tax Commission. The language of the Act is

clear and positive that the State Tax Commission shall have the final determination of assessments of all property in all the counties and cities of the State, subject to such review only by the courts as was provided by the statute." The fifth and sixth questions submitted for review, as set out in the opinion of the Court, were: "5th. The method of computing the deterioration of the property in said appeal involved." "6th. The method of computing the construction of overheads in estimating the value of the property in said appeal involved," and in reference to these questions the Court said: "The fifth and sixth questions presented by the petition are questions of fact and not of law, and are not open for review by the courts." In the case of *Postal Tel. Cable Co.* v. *Harford Co.,* 131 Md. 96, the first and fourth questions of law set out in the petition of the appellant to be reviewed by the Circuit Court for Harford County related to the jurisdiction of the Commission to increase the assessment made by the County Commissioners, and were reviewed by the lower Court and disposed of by this Court. The sixth and seventh questions of law related to the propriety of the Commission taking into consideration the easement of the company in the public highway in assessing its property, and the Court, after stating that the record showed that the Commission placed a value on such easements, proceeded to dispose of the questions. The second, third and fifth questions set out in the petition of the appellant were as follows:

"Second—The admissibility in evidence, as proof of the value of your petitioner's easements, of testimony that the Bankers and Traders Telegraph Company had paid $3.00 per pole for their right of way twenty years ago.

"Third—The arbitrary method pursued by the State Tax Commission of Maryland in valuing the alleged easements of your petitioner at $6,000.00, no legally sufficient evidence having been produced at said hearing that your petitioner was the owner of easements in Harford County, and no legally sufficient evidence having been produced at said hearing as to the value of such alleged easements."

"Fifth—The method of computing deterioration in value of the property involved in said appeal."

In reference to these questions, and the eighth question set out in the appellant's petition, JUDGE BURKE, speaking for the Court, said: "There is no evidence to support the second, third and fifth reasons assigned. The ground of complaint in the eighth paragraph of the petition relates merely to alleged irregularities or omissions of the State Tax Commission in methods of procedure, etc. None of the things complained of affected the jurisdiction of the Commission to hear and decide the case, and there was no obligation upon the Commission to have taken and preserved the evidence taken at the hearing. If the appellant thought this desirable, it was at liberty to have had a stenographic copy of the evidence taken. It was certainly not the duty of the State Tax Commission, any more than it is the duty of a Court of record, to cause to be prepared and file as a part of its records, a copy of the evidence taken upon the hearing. The Act does not require this." In the case of *Mayor & C. C. of Hyattsville* v. *C. & P. Tel. Co., supra,* the Mayor and Council of Hyattsville assessed the personal property of the telephone company and upon protest by the company it refused to abate the assessment as being contrary to law. The telephone company appealed to the State Tax Commission, and the Mayor and Council contended before the Commission: (1) that there was no right of appeal to the Commission, and (2) that the Commission was without authority to review and abate the assessment. The Commission ordered that the assessment be vacated and set aside, and the Mayor and Council appealed to the Circuit Court for Prince George's County. The questions of law thus appearing upon the record, were disposed of by this Court, and the order of the Circuit Court sustaining the action of the Commission was affirmed. In *Mayor, etc., of Baltimore* v. *German-American F. Ins. Co., supra,* the question of law to be reviewed by the Court was whether it was the duty of the State Tax Commission, in computing the

value of the shares of stock of the insurance company, to deduct from the assets of the company the amount invested by the company in mortgages, as authorized by law, and this Court affirmed the order of the lower Court reversing the action of the Commission in refusing to make the deduction. In all of the cases referred to the Court adheres to the doctrine that only questions of law can be reviewed by the courts on such appeals, and that the courts are not required to make assessments of property for the purpose of taxation.

Turning to the record in the present case, there is nothing in the record of the proceedings before the Commission, or, indeed, in the petition of the appellant, to which we have referred at much length, to show what method the Commission adopted in arriving at the value of the shares of stock of the appellant; or what method was adopted by the Commission in valuing the shares of other corporations; or to show the value or assessment of the shares of other corporations; or to show the value or assessment of other property in the State; or to show the inequality or injustice of which the appellant complains; or to show that the assessment of the appellant's shares of stock is excessive, even if we assume that an excessive assessment of property could be treated as a question of law in the absence of evidence to show that it resulted from the adoption by the Commission of an unlawful method of assessing the stock, as for instance where the Commission, as in *Mayor, etc.,* v. *German-American F. Ins. Co., supra,* refuses to make a deduction allowed by law from the assets of the company.

The appeal allowed by the sections of the Code relied on by the appellant is for the purpose of having questions of law involved in the action of the Commission *reviewed* by the courts, and not for the purpose of having the courts pass upon mere moot questions. As the petition and record in the Court below presented no question reviewable by that Court, we must affirm its order dismissing the appeal.

*Order affirmed, with costs.*