# SUSQUEHANNA POWER COMPANY *v.* STATE TAX COMMISSION.

### [No. 39, April Term, 1930.]

*Decided June 12th, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Parke, Digges, and Sloan, JJ.

*Stevenson A. Williams* and *Charles McHenry Howard,* with whom was *Frederick R. Williams* on the brief, for the appellant.

*Thomas H. Robinson* and *Robert H. Archer, Jr.,* with whom was *Charles H. MacNabb* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On October 10th, 1929, the State Tax Commission of Maryland assessed the capital stock of the Susquehanna Power Company, a Maryland corporation, at $6,000,000, and on October 11th notified it that the assessment would become final unless cause to the contrary were shown within fifteen days from that date. On October 23rd, 1929, the company filed a protest, which was heard on November 8th. After that hearing, on December 18th, 1929, the assessment was made final, and on or about January 2nd, 1930, the company filed in the Circuit Court for Harford County a petition in the nature of an appeal from the action of the commission, and on January 3rd, 1930, addressed a similar petition to the Comptroller of the Treasury and the Treasurer of Maryland. The latter appeal has not apparently been considered, but the appeal to the Circuit Court for Harford County was in due course heard, and on January 20th, 1930, by an order of that court, the assessment made by the State Tax Commission was affirmed. From that order the company has appealed to this court.

The questions raised by the appeal are: (1) Whether an appeal lay from the action of the State Tax Commission to the Circuit Court for Harford County; (2) whether the commission erroneously included in its valuation of the company's machinery in its power house and dam "the cost of adapting such power house and dam to receive the same"; (3) whether a provision, contained in Code, art. 81, sec. 183, that in no case shall the stock of a corporation such as the appellant be valued in the aggregate for assessment at less than the full value of the real estate and chattels real or personal, is repugnant to articles 15 and 23 of the Maryland Bill of Rights and to the Fourteenth Amendment to the Constitution of the United States, and therefore void; (4) whether any valuation of the capital stock of the company in excess of the value of its real property and chattels real and personal must necessarily include the value of its "franchise rights" granted under a license from the Federal Power Com-

mission and is void; and (5) whether, as its stock is owned by a nonresident, it is taxable in Maryland.

In view of the decisions in *Balto. & Phila. Steamboat Co. v. State Tax Commn.*, 157 Md. 282, and *Fidelity Trust Co. v. Gorman*, 134 Md. 338, there can be no possible doubt as to the right of the company to appeal on any question of law from the action of the State Tax Commission to the Circuit Court for Harford County. The appellee moved to dismiss the appeal in the lower court on the ground that, as Code, art. 81, sec. 170, allowed an appeal to the Comptroller of the Treasury and the Treasurer, that right was exclusive. But that statute was in force when the cases cited were decided, and it must be assumed that, in deciding that an appeal lay also to the courts on questions of law, under sections 253, 259, article 81 of the Code of 1912, it was considered that the right to appeal to court and the right to appeal to the Comptroller and the Treasurer were cumulative and not exclusive remedies. The reason for that conclusion becomes apparent when the two remedies are compared. The appeal to court, being upon questions of law only, was designed to secure to the taxpayer the privilege of having the decisions of the commission on such matters reviewed by the only agency competent to deal with them, while the appeal to the Comptroller and Treasurer gave to him the privilege of having the judgment of the commission on questions of fact reviewed by a board of two laymen, fiscal officials, who by the nature of their offices were qualified to decide such questions.

Broadly stated, the next point presented by the appeal is that the commission erred (1) in its rulings on the prayers or instructions submitted by appellant, and (2) that it erred in failing to state the reasons which influenced it in valuing appellant's stock, and that these errors invalidated the assessment which it imposed on such stock.

Taking the second of these questions, it cannot be fairly said that the commission failed to state the reasons which affected its action. For when Mr. Howard, of counsel for the company, suggested at the hearing, "We would know better how to proceed if the commission would give us some

idea how they arrived at this tentative value of $6,000,000," the chairman of the commission replied, "We made the assessment in accordance with the law. The three elements mentioned by the law—market value of the stock, net earnings and net assets—were taken into consideration." It is true that, after the chairman had made that statement, the Attorney General stated that the commissioners "did not have to tell how they did their work." We do not agree with that statement, and in our opinion the law is otherwise. The commission was an administrative fact finding board, created by statute with such powers, and only such powers, as the statute gave it. It was neither above nor beyond the law, and when its conclusions were challenged in some appropriate and orderly manner sanctioned by law, it was bound to justify them by showing that they had a legal basis. It had no more right to assess property by fiat, and without regard to its actual worth, than it had to bodily appropriate the private property of the citizen to the use of the state. Its tentative assessment had been made without consulting the taxpayer, and without notice to him, and, while ordinarily and in the absence of any direct attack, its action will be presumed to be correct (*Cooley on Taxation,* sec. 1073), when it is directly attacked, justice requires that the assessors should be required on demand of the taxpayer to state the basis of the assessment. In *Consol. Gas Co. v. Baltimore City,* 105 Md. 52, this court said:

"The appellees have cited in their brief numerous, respectable and eminent authorities from other jurisdictions to sustain the proposition that the method of assessors in arriving at their conclusions is a matter absolutely committed to their discretion, and that the members of such tribunal cannot be put upon the stand to testify as to the operation of their minds in doing the work entrusted to them, and many of those authorities are collected in 27 *Amer. & Eng. Ency. of Law* (2nd Ed.), page 689.

"After careful consideration of these authorities however, and with due respect to the eminent courts by which they

are announced, we do not think the law can be so declared in this State.

"No proceeding more closely analogous to the present can be found, than that employed in condemning land under the principle of eminent domain, and in such cases, ever since the case of *Tide Water Canal Co. v. Archer,* 9 G. & J. 317, the practice in Maryland has allowed the examination of jurors, who signed the inquisition as witnesses, on return of such inquisition for confirmation, 'upon all subjects whatever relating to the controversy, as fully as any other persons who might be sworn as witnesses in the cause, that they may be examined as to the grounds and motives for their finding, in order to ascertain whether in coming to their conclusions they had not mistaken facts as well as the law.' "

And while that case dealt with the examination of the assessors in the circuit court on appeal, its reasoning applies as well to a proceeding before the assessors themselves. For unless the taxpayer is permitted to ascertain from that source what basis there was for the assessment, he would be at the mercy of the uncontrolled discretion of the commission, since he could obtain it from no other source, as the members of the commission cannot under the present procedure be examined in court. *Fidelity Trust Co. v. Gorman,* 134 Md. 340.

But conceding so much, the objection is without point in this case, for, as we have stated, the commission did give its reasons for the assessment it made, and those reasons were rational, sufficient, and legal, and we find no support for the statement that the commission "refused, though repeatedly requested to do so, to give any reasons, or indicate in any way by what process their 'tentative assessment' was arrived at." Had the appellant desired any more detailed or specific statement than that given, it could have applied for it by addressing appropriate questions, designed to elicit it, to the commission. But having failed to do that, it cannot now complain that questions which it failed to ask were not answered.

The next objection is that the commission erred in its rulings on the instructions submitted by the appellant. The

first answer to that objection, so far as it relates to the first, fourth, and fifth instructions, is that they are mere legal abstractions which are not shown to have any relation to the action of the commission or the evidence before it. The first instruction stated as a matter of law that "the turbine wheels, dynamos and other machinery installed by said company in its power house and dam on the Susquehanna River, in Harford County, should be valued at their full value as machinery, without including in such valuation the cost and expense of installing the same or of adapting said power house and dam to receive the same." Its fourth announced that so much of Code, art. 81, sec. 163, as declared that "in no case shall the stock of any corporation, in the aggregate, be valued at less than the full value of the real estate and chattels, real or personal, held by or belonging to such corporation," was void as in conflict with articles 15 and 23 of the Declaration of Rights of the Maryland Constitution, as well as with the Fourteenth Amendment of the Federal Constitution.

But there is nothing in the record from which it can be inferred that the commission included in the value of appellant's machinery the expense of installing the same or of adapting the power house and dam to receive it. Moreover, assuming that the cost of adapting the power house and dam to receive the machinery could not be included in the valuation of the machinery, the first instruction further stated that the expense of installing it should not be included in such valuation, and in that it went too far. The value of chattels of that character includes, as one of its elements, the expense of fitting it for the owner's uses. And if such expenditure give the chattel an added intrinsic value, it should be considered in any valuation of it. And if, in considering that element of value, the commission erred, its error was one of judgment, which the circuit court was not authorized to review. *Baltimore v. Ches. & Pot. Tel. Co.*, 131 Md. 55.

The fourth and fifth instructions presented the proposition that the mandate in section 163, article 81 of the Code, that in no case shall the stock of a corporation in the aggregate be valued at less than the full value of the real estate

and chattels held by or belonging to such corporation, is unconstitutional. But, in view of the express declaration of the chairman of the commission, that in valuing the stock the commissioner considered the "net" assets of the corporation, it cannot be assumed that its action was affected by that mandate, nor does it appear that the assessment was in fact higher than the fair value of the stock assessed. If the provision is given the construction asserted by the appellant, that it results in double taxation, there would be more force in its argument that it is repugnant to both the State and Federal Constitutions and void. But in our opinion the provision cannot reasonably be given any such construction. Mortgaged real estate is taxable to the mortgagor at its actual assessed value without respect to the mortgage lien. *Allen v. Harford County,* 74 Md. 294. And mortgaged chattels are assessable to the mortgagor in possession without deduction of the amount of the debt. *Fields v. Russell,* 38 Kan. 720. There is in this state no direct tax on the personal property of the corporation (Code, art. 81, sec. 163), and the value of the real estate upon which there is a direct tax is deducted from the aggregate value of both its real and personal property before its stock is finally valued for assessment. So that the final assessment of the shares, in so far as it represents tangible property, includes no part of the value of the real estate, but is based upon the value of the personal property alone, and the situation is not materially different from what it was in 1874, when that provision first found its way into the law. As the law then stood, the property of corporations was assessed indirectly through their stock, and the provision meant no more than saying that their holdings of real and personal property should be assessed to the owners thereof without regard to liens or incumbrances. And while the law has been changed so as to permit the direct taxation of real property held by corporations, the change did not invalidate that provision, because under the amended law the value of the real property was excluded for the valuation of its stock, and that valuation represented only the tangible and intangible personal property of the corporation, without regard to

any liens thereon. And since it could have taxed such property directly without reference to such liens, there is no valid reason why it may not be taxed indirectly through appellant's capital stock, on an assessment made without reference to liens or debts, for in neither case would the corporation be called upon to pay taxes upon more than the assessable value of its property. And there is no possible basis for the contention that the method adopted subjects any of the corporate property to double taxation. For under it the realty is subjected only to direct taxation, and the personal property only to indirect taxation, based in both instances on the fair value of the property taxed.

The third instruction announces that "the valuation of the company's turbines, dynamos and other machinery constituting an essential part of its power development or unit, constructed and operated under its license from the federal government, and therefore exempt from taxation by the State, should be deducted or not included in such assessment or valuation." The controlling principle in that proposition is that appellant's pool, dam, and power house are dedicated to a federal use and therefore exempt from taxation. That contention was considered and rejected in *Susquehanna Power Co. v. State Tax Commn.*, ante page 334, and, for the reasons stated in the opinion in that case, this instruction was properly refused.

Appellant's sixth instruction stated that any valuation of its stock must necessarily include the "value of the franchise rights" granted under the license of the Federal Power Commission, and that such value is not taxable. The license itself is of course exempt from state taxation. But that exemption does not extend to property owned and used by the licensee, unless the tax would interfere with its performance of some federal duty or function. *Susquehanna Power Co. v. State Tax Commn., supra.* And while it may be assumed that the appellant could not operate its project without the license, nevertheless it may be valued and assessed without including the actual value of the license, just as the property of a manufacturing or mercantile establishment may be taxed

and assessed without including in the valuation the value of the license which enables it to operate. For the property of the corporation is separate and distinct from its right to operate or to use its property in a specific way. *McCulloch v. Maryland,* 4 Wheat. (U. S.), 416; *Union Pac. R. Co. v. Peniston,* 18 Wall. 5; *Thomson v. Union Pac. R. Co.,* 9 Wall. 579; *State v. Thomas Cruse Sav. Bank,* 21 Mont. 50. And since the instruction failed to make the alleged exemption contingent upon the fact that any assessment of the property would interfere with its performance of some federal function or duty validly imposed upon it, it was defective.

The remaining contention is that, as all of appellant's stock is held by the Philadelphia Electric Company, a nonresident corporation, it cannot be taxed at all in this state. The stock was assessed to the nonresident at appellant's principal office in Bel Air, Harford County, Maryland, under the authority of Code, art. 81, sec. 154, and the appellant is required to pay all taxes levied thereon. *Ibid.,* secs. 163, 166, 166A. The objection therefore goes beyond the immediate assessment, and reaches the statutes under the authority of which it was made. The effect of those statutes was to fix the situs of stock in a Maryland corporation held by a nonresident in the county or city where such corporation was situated, to impose upon the corporation an obligation to pay any valid tax levied thereon, and to authorize it to charge such payment to the account of the stockholder, and such was the law not only at the time the company was incorporated, but at the time *Corry v. Baltimore City, infra,* was decided. Acts 1896, ch. 120, sec. 141. The question therefore falls precisely within the decision of this court in *Corry v. Baltimore City,* 96 Md. 310, in 1903, and of the Supreme Court in *Corry v. Baltimore,* 196 U. S. 465, decided in 1905, and *Hannis Distilling Co. v. Baltimore,* 216 U. S. 285, decided in 1910, in which the validity of those statutes was established. But it is asserted that the Supreme Court in two recent cases, *Safe Deposit Co. v. Virginia,* 280 U. S. 83, and *Farmer's Loan & Trust Co. v. Minnesota,* 280 U. S. 204, has rendered the authority of the *Corry* case doubtful. But after a careful examination of those cases

we are unable to agree with that conclusion. The court in the Virginia case was called upon to determine whether securities, stocks, and bonds, held in Maryland by a trustee domiciled there for the eventual use of persons domiciled in Virginia, and which were properly taxed in Maryland, were also taxable in Virginia, and it was held that they were not, because they had acquired a "situs separate from that of the beneficial owners." In the *Minnesota* case the court was dealing with the right of that state to impose a death tax on negotiable bonds and certificates of indebtedness issued by the State of Minnesota and the cities of Minneapolis and St. Paul, but owned by a person domiciled in the State of New York and held in that state. He died testate, his will was probated in New York, his estate was administered there, and there a testamentary transfer tax was paid on these securities. Minnesota imposed a similar tax on the same securities, and the question presented was whether it had the power to do that. It was held that it had not, apparently upon the theory that the bonds were choses in action, and that their situs was fixed at the domicile of the decedent who held them at the time of his death. Neither of those decisions involved the questions presented here and decided in *Corry v. Baltimore, supra,* which are: (1) that a state may determine the situs of stock issued by a corporation chartered by it and owned by nonresidents, where the legislation effecting that result was in existence at the time the charter was granted, and (2) that as an incident of that power it may require the corporation to pay the tax, and (3) may authorize it to charge such payment to the account of the stockholder.

Nor are the reasons which led the court in the *Minnesota* case to overrule *Blackstone v. Miller,* 188 U. S. 189, present in this case, but on the contrary, if judicial decisions are to be controlled by the changing demands of trade and commerce and consideration of public policy, such considerations inevitably demonstrate the wisdom of the conclusion reached in *Corry v. Baltimore, supra.* There is no question of double taxation presented here, but the essential question is whether

the stock is to escape taxation altogether in the state where the tangible property which it represents is situated.

The only remaining question is whether there is anything in the nature of the assessment itself or apparent on the face of the record which can justify the inference that the assessment was not fairly and justly made. In the absence of any showing to the contrary, it will be presumed that members of the commission acted fairly and in good faith, and that the assessment is correct. *Cooley on Taxation,* secs. 1073, 1011. And the record contains nothing which can affect that presumption. It is undisputed that the fixed investment of the company in Maryland is $45,677,316.90. The aggregate assessment made by the commission was $28,726,132 and from that the amount of the assessment of the real estate, $22,726,132, was deducted, leaving a balance of $6,000,000, which was allocated to the stock. There is no contention in this case that the aggregate assessment is excessive, or that the valuation of the real estate as such was unreasonable, and we can find nothing in these findings, which were based upon information furnished by the company, or elsewhere in the record, which affects the validity of the assessment which is the subject of this appeal, and the order appealed from will therefore be affirmed.

*Order affirmed, with costs.*