## BALTIMORE & PHILADELPHIA STEAMBOAT CO. v. STATE TAX COMMISSION.

[No. 57, January Term, 1929.]

*Decided April 19th, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS. OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Thomas F. Cadwallader,* for the appellant.

*Herbert Levy, Assistant Attorney General,* with whom were *Thomas H. Robinson, Attorney General, A. Walter Kraus, City Solicitor,* and *Simon E. Sobeloff, Deputy City Solicitor,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court, affirming an assessment made for the year 1928, by the State Tax Commission of Maryland, of the capital stock of the appellant, the Baltimore and Philadelphia Steamboat Company, a Maryland corporation.

The State Tax Commission assessed appellant's stock at the rate of $30 per share, making a total assessment of $422,100 prior to deduction of assessed value of its Maryland real estate. The aggregate assessment for the preceding year 1927, at the rate of $23.50 a share, was $330,645. The assessed value of the stock, therefore, for the year 1928, was $91,455 in excess of its aggregate assessment for 1927. Its par value at $20 per share was $281,400.

A protest was promptly made by the company to the State Tax Commission, in which it contended that the increase in the assessed value of the stock was wrongfully made, as there was nothing to justify such increase in its value. The company, as it stated, had, the previous year, failed to pay any dividends and had suffered loss of revenue, and though it had added to its fleet a large new steamer, the John Cadwalader, of over 500 dead weight tons, it was largely built on borrowed money, and the earnings of the company, due to her operation, had not been increased thereby. In addition thereto, it was contended by the appellant that said steamer was "exempt from all taxation in this state, for state or local purposes," under article 81, section 9, of the Code of Public General Laws of this State, which reads as follows:

"All vessels of over five hundred (500) deadweight tons registered at any port in this state and owned by an American citizen, partnership or association, or by any corporation incorporated under the laws of the State of Maryland, regularly engaged in foreign or coastwise commerce, between any port

in the State of Maryland as the port of origin and terminus of their respective voyages and any other port or ports beyond the limits of the Chesapeake Bay and its tributaries, are exempted from all taxation in this state for state or local purposes; and, in ascertaining or determining the aggregate value and the taxable value of shares of the capital stock of any corporation incorporated under the laws of this state, in the manner provided in section 166 of this article, the value of such vessel property owned by any such corporation shall be excluded, anything in said section 166 to the contrary notwithstanding, until and including December 31st, 1935."

A hearing was had upon the protest of the appellant, whereupon the State Tax Commission rendered its finding, "that said vessel is regularly engaged in commerce between a port in the State of Maryland, to wit: The port of Baltimore, as the port of origin and terminus of its respective voyages and a port beyond the limits of the Chesapeake Bay and its tributaries, to wit: the ports of Philadelphia and Chester, Pennsylvania, situated on the Delaware River, and that, in making its voyages between these points, it traverses the Patapsco River, Chesapeake Bay, Elk River, Back Creek, the Chesapeake and Delaware Canal and the Delaware River," and "that at no place during its voyages between the points of origin and terminus does it touch on the sea coast and at no time is it engaged in foreign or coastwise commerce."

An appeal was taken to the Baltimore City Court from such finding. A motion was filed in that court, by the Attorney General of the State, asking that the appeal be dismissed on the ground that "there is no right of appeal prescribed by law in cases of this character." This motion was overruled and we think properly so. The first reference to this question is found in *Fidelity Trust Co. v. Gorman,* 134 Md. 338, where it is said: "The appeal to the court below, and the present appeal were taken under sections 239 and 245 of Vol. 3, article 81 of the Code, as enacted by the Act of 1914, ch. 841, and no question appears to have been made in the lower court, and none has been made in this court, as to the right

of appeal under those sections from the action of the commission in assessing the shares of stock of a corporation, as distinguished from appeals from the decisions of the commission when reviewing the action of the county commissioners of the counties or the Appeal Tax Court of Baltimore City. Without stopping to consider how far that question has been disposed of in the cases of *M. & C. Hyattsville v. C. & P. Tel. Co.*, 131 Md. 589, and *Mayor, etc., of Baltimore v. German American F. Ins. Co.*, 103 Atl. 980, and assuming that the sections referred to authorize an appeal to the Baltimore City Court in cases like the present, the question to be determined here is whether the petition of the appellant in the lower court and the record of proceedings before the commission presented any question reviewable by that court."

Since the decision in that case, there have been a number of cases heard by this court on appeal from the lower court to which an appeal had been taken from the action of the State Tax Commission in assessing the shares of stock of corporations as in this case. *State Tax Commission v. Eureka Life Insurance Co.*, 150 Md. 380; *Schluderberg Co. v. Baltimore*, 151 Md. 603; *Industrial Corporation v. State Tax Commission*, 134 Md. 379. In the last of these cases, the expression is used "further appeals have been taken by the corporation to this court, as permitted by sections 239 and 245 of article 81 of the Code." With this recognition of the right of appeal in these cases, we are not now disposed to put any construction upon the statute at variance with such established practice and the views expressed in the cases above cited.

The remaining question to be decided is whether the John Cadwalader, the steamer in question, is regularly engaged in foreign or coastwise commerce. It is needless to say that she was not engaged in foreign commerce. Therefore, we are left to determine whether she was engaged in coastwise commerce.

The meaning of the term "coastwise commerce," as defined by lexicons or dictionaries, differs from the meaning given to it by the courts, both federal and state, when called upon to construe statutes in which the term is used. We must,

therefore, determine whether we shall accept the definition of the lexicographers, or that of the courts, in construing or interpreting the statute in question. When there is nothing in the statute indicating that it was the intention of the Legislature that the definition of the term, as given by the dictionaries, should be applied in construing the statute, it would seem that the definition of the courts and not the definition of lexicographers should be accepted, and it may, we think, be assumed that the Legislature in such case intended that the term should be given the meaning universally given to it by the courts in construing or interpreting statutes in which it is used.

In *Ravesies v. United States,* 37 Fed. 447, which was an appeal from the District Court, it was said, in reversing the decision of that court: "The error assigned in the case, and the only matter presented to this court for decision, is whether the words, 'any vessel engaged in the coastwise trade,' * * * include vessels engaged in the carrying trade on navigable rivers, or is to be limited to vessels engaged in the carrying trade along the sea-coast. The district judge held, and gave judgment accordingly, that 'coastwise trade' means trade or intercourse carried on by sea between two ports or places belonging to the same country, and does not include trade carried on on the navigable rivers. I am inclined to the opinion that this interpretation is too narrow. In the statutes of the United States relating to commerce, navigation, and revenue, the words 'coasting trade' and 'coastwise trade' are used synonymously. See Act April 14, 1874 (Rev. St., secs. 2513, 4358); 16 *Op. Atty. Gen.* 247. In the case of *Gibbons v. Ogden,* 9 Wheat. 214, it is said by Chief Justice Marshall, in giving the opinion of the court: 'The coasting trade is a term well understood. The law has defined it, and all know its meaning perfectly. The act describes with great minuteness the various operations of a vessel engaged in it, and it cannot, we think, be doubted that a voyage from New Jersey to New York is one of those operations.' "

In the case of *United States v. The James Morrison,* 26 Fed. Cas., page 581, the court said: "The 'coasting trade' is a part of the commerce among the several states; and it is not the less a part of that commerce, because the vessel navigates only from port to port, in the same state, up and down a navigable river of the United States, and never goes beyond the state boundary."

In the case of *San Francisco v. California Steam Navigation Co.,* 10 Cal. 504, the action brought was to recover of ·defendants a sum of money for harbor dues in the City and County of San Francisco, imposed upon its vessels plying between San Francisco and Sacramento, and San Francisco and Stockton. Defendants demurred to the complaint and the demurrer was overruled and judgment entered for plaintiffs, and from that judgment an appeal was taken. The court on appeal said:

"The acts relied on by respondent impose these dues on all vessels plying coastwise and entering the harbor of San Francisco; and the only question raised on the record is, whether the defendants' vessels are embraced by this definition.

"The terms 'plying coastwise,' in this connection, and the 'coasting trade,' have a settled meaning. They were intended to indicate vessels engaged in the domestic trade, or plying between port and port in the United States, as contradistinguished from those vessels engaged in the foreign trade, or plying between a port of the United States and a port of a foreign country. This is evident from the various regulations of commerce made by the acts of Congress and otherwise, and the numerous decisions of supreme courts of the Union and of the several states. (See *Benedict's Admiralty,* 131, 123, 28, 35; 1 *U. S. Stat. at Large,* 55; *Ib.,* 94; *Ib.,* 305; 3 *Ib.,* 492; 5 *Ib.,* 304; see also 1 *Wendell,* 557; *Blackwell v. Walker; Gibbons v. Ogden,* 9 Wheat., 1.)."

The opinion then quotes from *Livingston v. Steamboat Co.,* 3 Cow. (N. Y.) 477, in which the court, giving a definition of the words 'coasting trade,' said: "According to the definition of the coasting trade, as extracted from the Act of Con-

gress of February 18, 1793, it means commercial intercourse carried on between different districts in different states, between different districts in the same state, and between different places in the same district, on the sea coast or on a navigable river. Agreeably to the definition a voyage in a vessel of suitable tonnage from New York to Albany is as much a coasting voyage as from Boston to Plymouth or New Bedford. In both, the *termini* are in the same state, and within the navigable waters of the United States; though in one the navigation is upon a river; in the other on the ocean. * * * In corroboration of this construction is the fact that all vessels employed in navigating the river take a coasting license."

As said by counsel for appellant in his brief: "It is plainly evident that the Legislature thoroughly understood what it was doing, because in the very same sentence in which the words 'foreign' and 'coastwise' appear, there is added the limitation that the exemption is not intended for traffic confined to the Chesapeake Bay and tributaries. How can it possibly be contended that if the General Assembly only had in mind traffic passing along the seacoast on the Atlantic Ocean, they would have found it necessary to specify that steamers plying only within the limits of the Chesapeake Bay and its tributaries were excluded? This clearly demonstrates that they use the term 'coastwise' in its commercial or maritime sense as defining the class of water-borne commerce that included the Bay traffic as well as that which goes outside the Capes to other domestic ports."

It may also be said that to hold that it was the intention of the Legislature to extend the exemption from taxation to steamers passing out of the capes into the ocean in their voyages to ports within or without the state, and not to grant exemption from taxation to steamers passing through the canal in their voyages to ports without the state, would be creating a distinction not based upon logic or reason. Or, in other words, we think it would be unreasonable and illogical to hold that it was the intention of the Legislature that a steamer of the size mentioned, trading between the ports

of Baltimore and Philadelphia, which in its voyage passes out of the Patapsco River into the Chesapeake Bay and then *southward* in the bay to the capes and into the ocean and thence up the coast and the Delaware River to Philadelphia, would be exempt from taxation, while a steamer of the same tonnage trading between the same ports, which in its voyage passes out of the Patapsco River into the Chesapeake Bay and *northward* in the bay to the Chesapeake & Delaware Canal and through the canal to the Delaware River and thence to Philadelphia would not be entitled to such exemption from taxation, when the object and purpose of the statute, it would seem, is to induce American owners of steamers, of the class mentioned, to register in a Maryland port.

The court below, we think, was in error in holding that the steamer John Cadwalder was not exempt from taxation under the statute in question, and we reach this conclusion after a full consideration of the well established principle that tax exemptions are to be strictly construed.

The order appealed from, sustaining the assessment of the State Tax Commission of Maryland against the appellant company, will be reversed and the cause remanded that the assessment may be corrected conformably with the views here expressed.

*Order reversed, and cause remanded.*