## M. HAMPTON MAGRUDER, Collector, *v.* JOHN D. HOSPELHORN, Receiver

[No. 10, October Term, 1937.]

*Decided October 29th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Homer R. Miller, Special Attorney for the Bureau of Internal Revenue, and James P. Garland, Special Assistant to the Attorney General,* with whom were *James W. Morris, Assistant Attorney General, Sewall Key* and *C. E. Dawson, Special Assistants to the Attorney General, Bernard J. Flynn, United States Attorney,* and *G. Randolph Aiken, Assistant United States Attorney,* on the brief, for the appellant.

*Stuart S. Janney* and *William A. Grimes,* with whom were *Ritchie, Janney, Ober & Williams* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court

No. 2 of Baltimore City, sustaining the objections of the receiver of the Baltimore Trust Company to a claim for income taxes for the years 1930, 1931, and 1932, alleged to be due the United States, and disallowing said claim.

The material facts in the case are not in dispute, as by a stipulation filed therein they are substantially agreed upon, and hence the solution of the questions presented depends upon the legal consequences flowing from the facts. They are as follows:

The Gould Coupler Company, hereinafter designated as lessor, on August 1st, 1930, was the owner of certain real property located in Erie County, in the State of New York; the same being subject to the lien of a first mortgage and deed of trust to the Chase National Bank of the City of New York in the sum of $4,000,000. On said date the company entered into an indenture with the Gould Storage Battery Corporation, an independent body corporate, hereinafter designated as lessee, under the terms of which the lessor leased to the lessee a part of its entire property, for the period of ten years, accounting from the date of the indenture, at an annual rental of $50,000. The indenture further providing that, in addition to said rental, the lessee would pay to the lessor a sum equal to fifty per cent. of the former's annual net profits, if any, to the extent of $250,000, during the period of the lease.

Among the more important provisions of the indenture, bearing upon the case now before us, it was agreed: (a) That the lessor from time to time would pay and discharge, or cause to be paid and discharged, all taxes, assessments, and governmental charges which might be lawfully imposed upon it or upon the leased premises; (b) that the lessor would at all times insure or cause to be insured all of the improvements upon the leased premises against loss or damage by fire and other usual hazards, in such manner and to the extent necessary to adequately protect the premises, in accordance with the provisions of the first mortgage and deed of trust of the lessor; all policies of insurance on the leased prem-

ises being made payable to the trustee under the first mortgage and deed of trust, and the lessor, as their interests might appear, and the application of such insurance as might be collected from losses to be made as set forth in the indenture; (c) that, if the rental fixed or otherwise reserved, or any part thereof, at any time remained unpaid for a period of sixty days after the same became due, the lessor could distrain therefor; (d) that, if the rental, or any part thereof, remained due and unpaid for a period of ninety days, or if the lessee violated any of the covenants contained in the lease and continued in default in respect thereof for a like period of ninety days after being notified of such default by the lessor, then and in said event, the lessee, at the option of the lessor, could be regarded as a tenant at will, and the lessor thereby have the right to re-enter upon the demised premises, whereupon the lease would become null and void and all payments of rental, fixed or otherwise, then made by the lessee and held in trust under the trust agreement to which reference is hereinafter made, be forthwith paid by the trustee, under said latter agreement, to the lessor; (e) the alternative contingency being that should the lessor fail, upon full performance by the lessee of all obligations on its part, to procure the release from the lien of said first mortgage and deed of trust, and convey to the lessee the leased premises, or such part thereof, as the lessee under its option therein elected to purchase, all funds in the custody of the trustee would then become payable to the lessee, whereupon the lease would likewise become null and void; (f) that the lessee should have the option, upon its full compliance with the terms of the lease, to purchase the leased premises, or a part thereof, upon the termination of the lease, at a fixed purchase price; the lessee, in event of such purchase, to be then credited on account of the purchase price with the fifty per cent. net profits, if any, in the custody of the trustee.

On the same day upon which the lease was executed, a trust agreement, by and between the lessor, the lessee,

and the Baltimore Trust Company, was entered into. The provisions of the latter agreement which more particularly concern the solution of the instant case are: (1) That all payments of rentals, fixed or otherwise, including payments on account of the option, be paid to the Baltimore Trust Company, Trustee, and credited by it to a capital account as principal, and, together with all income therefrom, be invested, from time to time, by the trustee, at the direction of the lessor; (2) subject to restrictions as to the character of investments made by the Trustee of all funds which it might receive, the manner of the investment and reinvestment of the trust funds to be committed to the "sole and absolute discretion and control" of the lessor and the Trustee; (3) all funds received by the Trustee, including all income accruing from investments thereof, to be held by the Trustee in trust for ultimate distribution in accordance with the terms of the lease agreement. '

It is obvious, from the aforegoing synopsis of both the lease and trust agreements, that the trust was created for the sole purpose of carrying out the terms of the lease agreement, embracing, as it did, the option to purchase the leased premises; and more especially to insure to the lessee, in event of its exercise of said option, a title for the leased property, or so much thereof as it might elect to purchase, free and clear of the lien of the first mortgage.

In other words, as set forth in the trust agreement: "This trust is established in order to carry out the terms of said lease with respect to rentals, fixed or otherwise, and the purchase price provided therein to be paid in trust, and shall terminate upon the expiration or cancellation of the lease and the application of all of the deposited funds, and the investments thereof pursuant to the terms of said lease. The rights of the parties to said funds and the investments thereof shall be as provided in said lease upon the contingencies therein mentioned."

It may be here stated that, in accordance with the

terms of the lease and trust agreements, the trustee assumed the trust and collected the following sums as rentals:

| | |
|---|---|
| 1930 | $20,833.35 |
| 1931 | 50,000.00 |
| 1932 | 41,666.66 |

On November 1st, 1932, following the appointment of receivers for the lessor, the lease was terminated in accordance with its provisions, and thereupon the lessee became entitled to the return of the rentals paid the trustee.

By agreement dated November 1st, 1932, between the Gould Storage Battery Corporation, the lessee, and Depew Securities Company, Inc., it is shown that the latter company succeeded to the rights of the lessee in and to the trust estate.

The record further shows that the greater part of the rentals received by the trustee were invested, under the direction of the lessor, in bonds of the lessor company, as permitted by the trust agreement. It appears that no income was derived from these investments in 1930, but thereafter the trustee received net income from such investments for the years 1931 and 1932, of $2,230, and $2,589.66, respectively. Upon these sums the trustee filed returns reporting taxable income thereon, and paid taxes thereon.

It is conceded that the trustee did not report as income the rentals paid to it by the lessee, and by the testimony of R. E. Frederickson, treasurer of the lessor, it is shown that rentals, in the exact amount received by the trustee, were reported as income in the tax returns of the Gould Coupler Company for the years in question; it being further conceded that the latter company did not pay any tax for the years involved, for the reason that, notwithstanding the computation of the rentals in its income returns, there was no taxable income shown therein to be payable to the government.

In 1935 the Commissioner of Internal Revenue assessed deficiency taxes against the trustee in the aggregate

amount of $13,568.55, plus interest thereon amounting to $2,612.32, and it is agreed, under stipulations found in the record, that such assessment is based entirely upon the treatment of the rentals as income to the trustee, and that no other items of income or deductions are involved.

Under the aforegoing state of facts, two questions are presented. The first of these is raised by the objection of the appellee to the admissibility of the testimony of the witness R. E. Frederickson, as hereinbefore set forth. The basis of the objection was that such testimony was immaterial and irrelevant, and an exception was reserved by the government, the appellee, to an adverse ruling of the lower court. In the view we take with reference to the computation of the rentals as income in the hands of the trustee, it becomes unnecessary to pass upon the first question.

As has been shown, the appellee's claim involves income taxes for the years 1930, 1931, and 1932, and hence the applicable statutes are the Revenue Acts of 1928 and 1932.

The controlling paragraph of the Revenue Acts of 1928 and 1932, substantially the same in both acts (45 Stat. 838; 47 Stat. 219), is found in section 161 (26 U. S. Code Ann. sec. 161 and note) as follows:

"Supplement E—Estates and Trusts

"Sec. 161. *Imposition of Tax*

"(a) Application of tax. The taxes imposed by this title [chapter] upon individuals shall apply to the income of estates or of any kind of property held in trust, including:

"(1) Income accumulated in trust for the benefit of unborn or unascertained person or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust."

It is not contended by the appellee that the beneficiary of the trust was other than an "unascertained person" within the purview of that part of the above quoted paragraph of the Revenue Act, and it is conceded by the appellee that the income acquired by the trustee from

the investment of the rentals was properly taxable to the trustee. Nor can there be any controversy over the fact that rentals under the provisions of the appropriate sections of the Revenue Acts, namely, section 22 and section 22 (a) of the Revenue Acts of 1928 and 1932, respectively, and section 119 of both said acts (45 Stat. 797, 826; 47 Stat. 178, 208 [26 U. S. Code Ann. secs. 22, 119 and notes]), are taxable as income. The real question, therefore, in the instant case, is: To whom are the rentals involved properly taxable for income purposes?

In this connection it should be borne in mind that the physical property owned and leased by the Gould Coupler Company, upon which the rentals were paid to the trustee under the provisions of the trust agreement, was never at any time in the possession or under the control of the trustee. On the contrary, there is no reference, either in the trust or lease agreements, to any duties incumbent upon the trustee, in so far as the management of the physical property is concerned. As has been indicated, the lessor continued to pay all taxes, assessments, and governmental charges and all insurance premiums upon the demised property. It reserved to itself the rights of distraint and re-entry, under certain contingencies set forth in the lease agreement; and it is plain from a careful examination of both the lease and trust agreements, construed conjunctively, that the only purpose of the trust was that of placing the rentals with the trustee, in escrow, to the end that the lessee would, upon the happening of certain contingencies set forth in said agreements, acquire title to all or a part of the leased premises, free of the lien of the first mortgage and deed of trust.

Gross income, under the provisions of section 22 of the Revenue Act of 1928, and the same section of the Revenue Act of 1932 (26 U. S. Code Ann. sec. 22 and note), is defined to include, among other things, profits and income "growing out of the ownership or use of or interest in" real or personal property. The computation

of the income tax payable is made upon the basis of the gross income, less proper deductions for taxes, insurance, and other items of general expense allowable by law, or the net income of the estate; and the same method of computation is applicable to all estates, including those in the custody of fiduciaries.

The fiduciary in the instant case was never in a position, for the purposes of computing the income tax on the fund held by it, to claim such deductions as are obviously contemplated by the law in behalf of the taxpayer. And it is equally apparent that the items warranting such deductions were available only to the lessor.

Our conclusion, therefore, is that these rentals, fixed or otherwise, were properly income to the lessor, taxable to it for income tax purposes; and that in the custody of the trustee, by virtue of the trust agreement, the fund assumed the status of corpus.

Under the terms of the trust agreement, the trustee was clothed with the duty of investing the corpus fund, and only the income on such investments was chargeable to it for income tax purposes.

To hold otherwise would, in effect, place the tax on gross instead of net income; for it is evident that the fiduciary was at no time in position to claim deductions for the ordinary carrying charges on the physical property, from which the rentals were derived, because at no time during the term of the trust did it pay any of them.

Reduced to its final analysis, the trust agreement was not designed to evade the payment of just income on either the original rental payments, which constituted the corpus of the trust fund, or the income derived from the investment of the corpus, by the trustee. Its evident purpose was to preserve the rentals for the procurement of the contemplated release from the first mortgage and deed of trust, as fully set forth therein, upon the termination of the trust.

From an examination of the numerous cases found in the carefully prepared briefs of counsel for the respec-

tive parties, we are unable to find any authority for the imposition of a tax upon the income from property not under the actual command of the taxpayer against whom the tax is charged. Or as stated by the late Justice Holmes, in *Corliss v. Bowers*, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916: "Taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid."

In the case before us, it is clear that title to the physical property from which the rentals accrued was, during the entire period of the trust, vested in the lessor. Stated differently, the leased property was at no time "held in trust," and the rents accruing therefrom must be regarded as having been constructively paid to the lessor, notwithstanding their diversion to the trustee for the purposes of the lease and trust agreements.

In the case of *Douglas v. Willcuts*, 296 U. S. 1, 56 S. Ct. 59, 62, 80 L. Ed. 3, it was held that a husband who had transferred to a trustee certain securities for the benefit of his wife, under and by virtue of his agreement with her, subsequently ratified by the court in satisfaction of alimony, was liable for the tax on the income from such securities, for the reason that said income was for his benefit, in that it satisfied his obligation to his divorced wife. The court, in disposing of this case, said: "We have held that income was received by a taxpayer, when, pursuant to a contract, a debt or other obligation was discharged by another for his benefit. The transaction was regarded as being the same in substance as if the money had been paid to the taxpayer and he had transmitted it to his creditor. *Old Colony Trust Co. v. Commissioner*, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918; *United States v. Boston & Main Railroad*, 279 U. S. 732, 49 S. Ct. 505, 73 L. Ed. 929. See, also, *United States v. Mahoning Coal R. Co.* (C. C. A.) 51 Fed. (2nd) 208. The creation of a trust by the taxpayer as the channel for the application of the income to the discharge of his obligation leaves the nature of the transaction unaltered."

*Lucas v. Earl,* 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731; *Luce v. Burnet* [60 App. D. C. 393] 55 Fed. (2nd) 751; *Daugherty v. Commissioner* (C. C. A.) 63 Fed. (2nd) 77; *Burnet v. Leininger,* 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665; *Bishop v. Commissioner* (C. C. A.) 54 Fed. (2nd) 298; *Ward v. Commissioner* (C. C. A.) 58 Fed. (2nd) 757.

In conclusion it may be stated that the creator of a trust out of income from property cannot escape liability for tax on such income, so long as he retains title to, or command of, the income producing property. *Blair v. Comm.,* 300 U. S. 5, 57 S. Ct. 330, 81 L. Ed. 465; *Iowa Bridge Co. v. Comm.* (C. C. A.) 39 Fed. (2nd) 777; *Hall v. Burnet,* 60 App. D. C. 332, 54 Fed. (2nd) 443, 83 A. L. R. 86; *Nelson v. Ferguson* (C. C. A.) 56 Fed. (2nd) 121.

And it may be added, as stated in *Gould v. Gould,* 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211: "In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen."

To hold, as contended by the appellant, that the trustee in this case is taxable upon the gross income of the property from which the rents accrued, would preclude just deductions for carrying charges upon property not held in trust by the trustee, and thereby discriminate against the taxpayer in favor of the government. The doubt in such a case would be in favor of the government, and the injustice of not allowing just deductions to the taxpayer would be the consequent result. *United States v. Field,* 255, U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617; *United States v. Merriam,* 263 U. S. 179, 44 S. Ct. 69, 68 L. Ed. 240; *McFeely v. Comm.,* 296 U. S. 102, 56 S. Ct. 54, 80 L. Ed. 83, 304.

*Order affirmed, with costs to the appellee.*