538 A.2d 1184

George W. DEAN, et al.

v.

Earl H. PINDER, Clerk of the Circuit Court for Kent County, Maryland.

No. 48, Sept. Term, 1987.

Court of Appeals of Maryland.

March 29, 1988.

Eldridge, J., filed dissenting opinion in which Cole and Adkins, JJ., concurred.

Philip W. Hoon (Hoon & Barroll, on the brief), Chester-town, for appellants.

C.J. Messerschmidt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Catherine M. Shultz, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

BLACKWELL, Judge.

There are two separate taxes imposed by the State of Maryland on the transfer of real property. The first is a recordation tax imposed upon the privilege of recording such an instrument, Maryland Code (1957, 1980 Repl.Vol., 1984 Cum.Supp.) Article 81, § 277; the second is a transfer tax imposed directly upon the instrument conveying title, Maryland Code (1957, 1980 Repl.Vol., 1984 Cum.Supp.) Article 81, § 278A.[1] In addition to these two taxes, Kent County imposes a local transfer tax upon instruments conveying title to real property. Kent County Code 1984, Article II, § 9–25. The assessment of these taxes is based on the "actual consideration paid or to be paid" to the transferor upon the transfer of real property. Article 81, §§ 277(b), 278A(b)(1); Kent County Code Article II, § 9–25.

This case presents the issue of whether the statutorily required "actual consideration" for the imposition of these taxes exists when the owners of real property transfer the title of that property to a corporation of which they are the sole shareholders. For the reasons set forth below, we find that the Court of Special Appeals correctly held that actual consideration was present for the imposition of these taxes.

## I. *Facts*

The facts of this appeal are neither complicated nor in dispute. The Petitioners, George and Jane Dean, (the "Deans") purchased two properties in Kent County, as tenants by the entireties. The first parcel, known as the Buck Bacchus House, was purchased on January 2, 1984, for $130,000. The second parcel was purchased on April 15, 1984, for $175,000 and is known as the Imperial Hotel. On May 14, 1984, the Deans created a Maryland corporation known as The Imperial Hotel, Inc. (the "corporation"). The following month, although the Deans paid no money into the corporation, they caused the corporation to issue 50

---

**1.** All statutory references hereafter, unless otherwise indicated, are to the 1984 Maryland Code.

shares of stock, 25 shares to each of them. Since the corporation owned no assets, the stock had no real value at the time of issuance.

Two days after the stock was issued, the Deans, acting in their capacity as the board of directors of the corporation, resolved that the corporation would borrow up to $1,375,000 to purchase and develop the properties. By a single deed dated September 14, 1984, the Deans conveyed both the Imperial Hotel and the Bacchus House to the corporation. At the time of the conveyance, the corporation made no payments to the Deans, nor was any additional stock issued.

On September 26, 1984, the Deans offered the deed to the Respondent, Earl H. Pinder, Clerk of the Circuit Court for Kent County (the "Clerk of the Court") for recordation with an appended affidavit of consideration asserting "there is no consideration paid or to be paid for the foregoing convey- ance." Relying on certain opinions promulgated by the Attorney General, the Clerk of the Court declined to record the deed without payment of recordation and transfer taxes in accordance with Article 81, § 277 and 278A.[2] The Deans then submitted a revised affidavit stating "the considera- tion paid or to be paid for the foregoing conveyance is Three Hundred and Five Thousand Dollars ($305,000)." This sum was arrived at by adding together the sums the Deans had paid for the two properties earlier in the year. Accordingly, the Clerk of the Court accepted the revised affidavit and the Deans were assessed and paid under protest $4,056.50 for state and county transfer and rec- ordation taxes.

The Deans then filed a claim for the refund of those taxes which was denied by the Clerk of the Court. On March 29, 1985 the Deans noted an appeal from the decision of the Clerk of the Court to the Maryland Tax Court. The Tax Court affirmed the assessment on the ground that the

---

**2.** *See,* e.g., 60 Op.Att'y.Gen. 671 (1975); 59 Op.Att'y.Gen. 681 (1974); 32 Op.Att'y.Gen. 394 (1947); 24 Op.Att'y.Gen. 974 (1939); 23 Op.Att'y. Gen. 624 (1938).

increase in value of the Deans' stock was an economic benefit that constituted actual consideration for the conveyance upon which the recordation and transfer taxes could be assessed. The Deans appealed that decision to the Circuit Court for Kent County (Wise, J.) which reversed the Tax Court finding that the increase in value of the Deans' stock holding did not constitute actual consideration for the conveyance. The Clerk of the Court thereupon appealed to the Court of Special Appeals. The Court of Special Appeals held that the increase in the value of stock was a real and substantial benefit to the Deans which constituted actual consideration for the conveyance of the two properties. Accordingly, the Court of Special Appeals reversed the decision of the Circuit Court and affirmed the judgment of the Tax Court. *Pinder v. Dean,* 70 Md.App. 252, 520 A.2d 1119 (1987).

The sole issue in this appeal is whether the above mentioned conveyance of property satisfied the "actual consideration" requirement for the imposition of state and county recordation and transfer taxes. The Deans contend that at the time of the conveyance, there was no possible consideration "presently existing in fact" and nothing was paid to them or "given over" by the corporation. As such, the Deans argue that no "actual consideration" existed as required by statute for the imposition of the recordation and transfer taxes. The Deans further contend that the Court of Special Appeals employed an impermissible "step-transaction" analysis by taxing future consideration that may be received for the subsequent sale of their stock. The Clerk of the Court, on the other hand, argues that the actual consideration "paid or to be paid" for a conveyance must be determined for the purpose of the recordation and transfer tax statutes by reference to the "economic facts" of the transaction as set forth in *Pritchett v. Kidwell,* 55 Md.App. 206, 461 A.2d 57 (1983). Under his theory, the conveyance increased the assets of the corporation, by causing the value of the stock to increase, and therefore the Deans received an actual and genuine economic benefit in return

for their conveyance of the properties. The Clerk of the Court further contends that the General Assembly's use of the word "actual" in Article 81, §§ 277 and 278A did not limit the meaning of "consideration" to money alone, rather, this language was used to emphasize that the consideration on which recordation and transfer taxes are to be based is the "real economic benefit" to the grantor, in whatever form that benefit may take.

## II

In 1937, the General Assembly enacted § 213 of Article 81 of the Annotated Code of Maryland under the subtitle "Tax on the Recordation of Instruments in Writing." 1937 Md. Laws Sp.Sess., Ch. 11, § 213. Since its enactment, this provision has been repealed and reenacted several times and was codified as Maryland Code (1957, 1980 Repl.Vol., 1984 Cum.Supp.) Article 81, § 277 at the time this dispute arose. This 1984 provision provided in pertinent part:

(a) *Written instruments.*—(1) Except as otherwise provided in this section, a tax is hereby imposed upon every instrument of writing conveying title to real or personal property, or creating liens or encumbrances upon real or personal property, offered for record and recorded in this State with the clerks of the circuit courts of the respective counties....

(b) *Instruments conveying title or securing debts.*—(1) In the case of instruments conveying title to property, the tax shall be at the rate of 55 cents for each $500 or fractional part thereof *of the actual consideration paid or to be paid;* in the case of instruments securing a debt, the tax shall be at the rate of 55 cents for each $500 of the principal amount of the debt secured. (Emphasis added.)

Although this tax is computable on the amount of consideration transferred, it is not considered a tax on property but rather an excise tax imposed upon the privilege of recording the deed. *Central Credit v. Comptroller,* 243 Md. 175,

182, 220 A.2d 568, 572 (1965); *Pittman v. Housing Author-ity,* 180 Md. 457, 459, 25 A.2d 466, 469 (1942).

In 1969, the General Assembly added § 278A to Article 81 (1965 Repl.Vol., 1968 Cum.Supp.) 1969 Md. Laws, Ch. 403 § 10, which permitted a transfer tax to be imposed directly on the instrument conveying title. Section 278A provided in pertinent part:

(a) Except as otherwise provided in this section, a tax is hereby imposed upon every written instrument conveying title to real property, or a leasehold interest therein, offered for record and recorded among the land records in the State, and on the transfer of title to real property or a leasehold interest therein on the filing with the State Department of Assessments and Taxation of articles of sale, . . . .

(b)(1) The tax imposed by this section shall be levied at the rate of .5 percent *of the actual consideration paid or to be paid* for the conveyance of title and shall be collected by the clerks of the circuit courts of the counties or the Department of Assessments and Taxation. (Emphasis added.) [3]

Maryland Code (1957, 1980 Repl.Vol., 1984 Cum.Supp.) Art. 81 § 278A.

Kent County Code (1984) § 9–25 imposed a similar local transfer tax and provided in pertinent part:

(a) The County Commissioners may impose a tax upon every instrument of writing conveying title to real property offered for record and recorded in Kent County with the Clerk of the Circuit Court, . . . .

(b) The tax authorized by this section shall be levied at the rate of not more than one-half of one percent (0.5%) *of the actual consideration paid or to be paid for the conveyance* of title and shall be collected by the Clerk of

---

**3.** Effective February 1, 1986, the state recordation and transfer tax statutes were recodified as Titles 12 and 13, respectively, of the Tax–Property Article.

the Circuit Court prior to his accepting any such instrument for recordation. (emphasis added).

## III

In construing the meaning of a word in a statute, the cardinal rule is to ascertain and carry out the intent of the General Assembly. *Tucker v. Firemen's Fund Ins. Co.,* 308 Md. 69, 73, 517 A.2d 730, 731 (1986). It is well-settled that when the Legislature has chosen not to define a term used in a statute, that term should be given its ordinary and natural meaning. *DeJarnette v. Federal Kemper Ins. Co.,* 299 Md. 708, 717, 475 A.2d 454, 459, (1984); *Brown v. State,* 285 Md. 469, 474, 403 A.2d 788, 791 (1979); *Mauzy v. Hornbeck,* 285 Md. 84, 92–93, 400 A.2d 1091, 1096 (1979); *Williams v. Loyola College,* 257 Md. 316, 328, 263 A.2d 5, 11 (1970). However, when the term in a statute is a legal term, absent any legislative intent to the contrary, the term is presumed to be used in its legal sense. *B & P Steamboat Co. v. State Tax Comm'n,* 157 Md. 279, 283, 145 A. 770, 771 (1929); *State v. Mace,* 5 Md. 337, 351 (1854); 2A N. Singer, *Sutherland Statutory Construction* § 47.30 (4th ed. 1984). We have consistently held that a term may be free from ambiguity when used in one context but of doubtful application when applied elsewhere. *Tucker v. Firemen's Fund Ins. Co., supra,* 308 Md. at 74, 517 A.2d at 732; *Truck Ins. Exch. v. Marks Rentals, Inc.,* 288 Md. 428, 433, 418 A.2d 1187, 1190 (1980); *Ebert v. Millers Fire Ins. Co.,* 220 Md. 602, 610, 155 A.2d 484, 489 (1959). In any case, we have instructed courts to consider not only the literal or usual meaning of the words, but also their meaning and effect in light of the setting, the objectives and purpose of the enactment. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987). With these principles in mind, we must determine the meaning of "actual consideration" as those words are used in the relevant enactments.

"Actual" is defined in *The Random House Dictionary of the English Language 21* (2d.ed. unabridged 1987) as "ex-

isting in act or fact; real" and "existing now; present, current." *Black's Law Dictionary* 33 (5th ed. 1979) similarly defines "actual" as "[r]eal; substantial; existing presently in act, having a valid objective existence as opposed to that which is merely theoretical or possible." The term "consideration", when referred to in the legal sense, is defined as "[t]he inducement to a contract ... [s]ome right, interest, profit or benefit accruing to one party." *Black's Law Dictionary* 277 (5th ed. 1979).

In applying these definitions to the statute, the Deans urge us to apply a very limited interpretation of the term actual consideration by restricting it to money or other tangible property. Because no money or other tangible property changed hands at the time of the transfer, the Deans contend no possible consideration was "presently existing in fact." Contrary to this belief, we are not persuaded that the Legislature intended such a limited application of these words when they employed them in the transfer and recordation tax statutes.

In *Pritchett v. Kidwell, supra,* the Court of Special Appeals addressed the issue of what the Legislature intended by "actual consideration paid or to be paid" under the recordation and transfer statutes and held this must be determined by reference to the "economic facts" of the conveyance. 55 Md.App. at 213–14, 461 A.2d at 60. The "actual consideration" flowing from the grantee to the grantor is what the parties themselves considered the bargain to be, regardless of the amount of money or other tangible property that the grantor may have received or that may have been stated on the deed. *Id.* at 213–14, 461 A.2d at 61. We agree with that court's interpretation of the statutes.

When the transfer and recordation tax statutes were recodified into the Tax–Property Article in 1986, the Legislature deleted the word "actual" when referring to the consideration upon which the tax is to be imposed. 1985 Md.Laws Ch. 8 § 2. The Revisor's Notes to these amend-

ments provide that the new language is derived without substantive change from the former recordation and transfer tax provisions, indicating that the word "actual" was not intended as the restrictive modifier that the Deans suggest. It is a well-settled practice of this Court to refer to the Revisor's Notes when searching for legislative intent of an enactment. *Allers v. Tittsworth,* 269 Md. 677, 683, 309 A.2d 476, 480 (1973).

Moreover, our reading of the recordation and transfer statutes is in accordance with the legislative history of those statutes. When §§ 277 and 278A were originally enacted neither contained a provision which required that the consideration for a conveyance be stated in the conveying instrument. In 1978, the General Assembly revised both statutes to require that "[a] statement of the amount of actual consideration paid or to be paid, if any, ... be included in every instrument taxable under this section offered for record as part of its recital ... or be contained in a separate affidavit accompanying the instrument, signed under the penalty of perjury...." 1978 Md.Laws Ch. 462. This amendment indicates that the reference to "actual consideration" was intended to require that taxes be assessed on the true value of the conveyance as opposed to merely a formalistic recital and that the phrase should not have the limited interpretation for which the Deans contend.

The Deans further argue that actual consideration does not exist when property owners transfer their property to a corporation for which they are the sole shareholders. Their contention, in essence, is based on the proposition that when they attempted to record the deed with the Clerk of the Court under the name of the corporation they were not actually conveying their property to another party but merely changing the title of ownership.[4] Therefore, they

---

4. Maryland Code (1957, 1980 Repl.Vol., 1984 Cum.Supp.) Art. 81, exempts certain transfers of real property from the recordation and transfer taxes, e.g., transfer between spouses or relatives, § 278A(b)(2); previously recorded instruments, § 277(j); transfer be-

argue no actual consideration existed at the time the deed
was filed. This proposition, however, ignores the fact that
a corporation is a distinct legal entity, separate and apart
from its stockholders. *Ace Development Co. v. Harrison,*
196 Md. 357, 365, 76 A.2d 566, 569–70 (1950); *Warren v.
Fitzgerald,* 189 Md. 476, 492, 56 A.2d 827, 834 (1947);
*Dixon v. Process Corp.,* 38 Md.App. 644, 645, 382 A.2d 893,
899 (1978). Thus, where a corporation takes title to real
property, it holds that property in its own name and right,
and a stockholder, as such, does not hold legal title. *Fid. &
Guar. Fire Corp. v. Tax Comm'n,* 172 Md. 652, 662, 193 A.
164, 168–69 (1937); *Cotten v. Tyson,* 121 Md. 597, 604, 89 A.
113, 116 (1913); *See also* 12B W. Fletcher, *Cyclopedia
Corporation* § 5753 (1984).

In *Columbia Reality Venture v. District of Columbia,*
433 A.2d 1075 (D.C.1981), a case quite similar to the instant
appeal, the appellant contended that a deed conveying prop-
erty from an unincorporated business trust to a limited
partnership, where the principals of each were essentially
the same, merely reflected a change in the form of owner-
ship and was unsupported by consideration on which a
recordation tax could be based. The Court of Appeals for
the District of Columbia, however, viewed the transaction
as a transfer of real property for consideration between
distinct legal entities and therefore upheld the recordation
tax. In its holding the Court noted:

"The deeds which were taxed in this case represent a
conveyance of property from one business entity to an-
other. Those entities are legally distinct and separate
from the individuals who hold interests in and receive
benefits from the business conducted. The elements of
similarity between the two business enterprises, to which
appellant points, are simply not relevant to determining
the nature of the property transaction between them; and

tween a corporation and its shareholders upon liquidation or termi-
nation § 277B(b); however, these exemptions do not apply to the
transfer in the instant appeal.

applying the deed recordation tax on that basis would be both confusing and misleading."

433 A.2d at 1077–1078 (footnotes omitted). Accordingly, we agree with the District of Columbia Court's rationale and find that the transaction in the case at hand cannot be characterized as a simple adjustment in a previously recorded deed, but rather was a complete change of the lawful ownership of real property, the exact event for which the tax is imposed.

■ The Deans' last contention is that the Court of Special Appeals employed an impermissible "step-transaction" analysis by taxing them on future consideration they may receive for the subsequent sale of their stock. We reject this contention. Before the transfer of properties the Deans owned stock in a "paper" corporation without assets. The transfer of the properties undeniably increased the assets of the corporation and, hence, the value of the Deans' stock. Moreover, when the Deans transferred the properties, the corporation assumed all mortgages, liens and encumbrances that may have been placed on the properties. Significantly, the Deans obtained the benefit of limited liability for corporate obligations with respect to the properties. *See Starfish Condo. v. Yorkridge Serv.*, 295 Md. 693, 714, 458 A.2d 805, 816 (1983).

■ The taxes imposed by the Clerk of the Court properly focused on the transaction as a whole and not on some benefit that might be incurred at a future date. As we previously stated, the state recordation and transfer taxes are in the nature of an excise tax imposed upon the privilege of recording certain instruments, including, among other things, the transfer of title to real property. *Central Credit v. Comptroller, supra; Pittman v. Housing Authority, supra.*

Accordingly, we hold that the Court of Special Appeals properly upheld the imposition of the state and county transfer and recordation tax.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.

ELDRIDGE, Judge, dissenting:

The majority holds that, when two individuals purchase property and pay the transfer and recordation taxes,[1] and when shortly afterwards they form a corporation and transfer the property to their wholly owned corporation, the second transfer to their corporation is also subject to transfer and recordation taxes. Under the majority's holding, what is essentially one overall transaction becomes subject to double taxation. Because I believe that the General Assembly did not intend this result, I dissent.

George and Jane Dean bought two parcels of real estate in 1984. The first, known as "Buck–Bacchus House," was purchased on January 2, 1984, for $130,000. The record in this case shows that the deed to the property was recorded on January 3, 1984, and that substantial transfer and recordation taxes, based on the $130,000 consideration, were duly paid. The other parcel, involving two tracts known as "Hotel Imperial Property" and "Hotel Imperial Stable Property," was acquired by the Deans on April 15, 1984, for $175,000. Again, the record in this case shows that the deed to this parcel was recorded on May 1, 1984, and that the transfer and recordation taxes, based on the $175,000 consideration, were duly paid.

Three days later, on May 4, 1984, the Deans formed a corporation, of which they were the sole shareholders. Each of the Deans owned 50% of the outstanding shares of stock. Subsequently, the Board of Directors resolved that the corporation would borrow money to renovate the two parcels which the Deans had just purchased. The Deans then deeded the properties to their corporation, receiving nothing in return.

---

1. *See* Maryland Code (1957, 1980 Repl.Vol.), §§ 277, 278A.

The grant from the Deans to the corporation merely changed the form of ownership of the properties. While technically the corporation is a distinct legal entity, as a practical matter the Deans are the corporation. They are the sole shareholders of a corporation formed exclusively for the purpose of renovating and managing the properties. Looking to the substance of the matter, no "transfer" occurred within the meaning of the statutes.

If the Deans were to purchase the properties in January and April of 1984, they had to do so as individuals, transferring it later to their subsequently-formed corporation. Had the corporation been in existence in January and April, it could have purchased the property, thus necessitating the payment of only one set of transfer and recordation taxes. But simply because the corporation was not formed first, the majority holds that the transaction is taxable twice.

Other courts, under similar circumstances, have concluded that transactions of this nature are exempt from taxes imposed upon the transfer of property. For example, in *Senfour Investment Co. v. King County*, 66 Wash.2d 67, 401 P.2d 319 (1965), three individuals purchased property prior to the formation of a corporation. After the corporation was formed, the individuals transferred the property by quitclaim deed to the corporation. The Washington Supreme Court pointed to the trial court's finding that "there was no intent on the part of [the individuals] to do more than hold the naked contract interest for the benefit of the plaintiff corporation when formed." 66 Wash.2d at 68, 401 P.2d at 320. Consequently, the court concluded that "[s]uch a conveyance is not a sale for a valuable consideration, as required by the statute." 66 Wash.2d at 70, 401 P.2d at 321.

Similarly, in *Wetherbee v. State*, 132 Vt. 165, 315 A.2d 251 (1974), two individuals (husband and wife) owned the premises of their business. The Wetherbees applied for a bank loan in order to obtain funds to make business improvements. The bank approved the loan on the condition that the business property be transferred to the corpora-

tion. The Wetherbees transferred the property to the corporation, which transferred it to the bank to secure the loan. The State sought to tax the initial transfer from the Wetherbees to the corporation, conceding, however, that the statute exempted the transfer from the corporation to the bank as a transfer "to secure a debt or other obligation." 132 Vt. at 167, 315 A.2d at 253. The Vermont Supreme Court concluded that the state took "too mechanical a view of the taxing statute." 132 Vt. at 168, 315 A.2d at 253. The court continued (*ibid.*):

> "If the tax is to be enforced according to its substantive import, the tax department must not be confined to the labels on the transactions. . . .
>
> "If the tax burden is to be justly imposed, there must be a . . . right in the taxpayer to establish that an apparently taxable transfer is, in substance, eligible for exemption.
>
>      \*     \*     \*     \*     \*     \*
>
> "Once the facts establish, as they do here, that the transfer is to secure a debt, the exemption applies."

*See also River Park Joint Venture v. Dickinson,* 303 So.2d 654 (Fla.Dist.Ct.App.1974). *But cf. Columbia Realty Venture v. Dist. of Columbia,* 433 A.2d 1075 (D.C.1981).[2]

The majority concludes that because the corporation is an entity separate and distinct from the Deans, a taxable transfer occurred.[3] This analysis places form over sub-

---

**2.** The majority in the instant case places strong reliance on the *Columbia Realty* decision. While the opinion in *Columbia Realty* does tend to support the majority's position, there is no indication from the opinion that *Columbia Realty* involved double taxation like that present in the case at bar.

**3.** The majority places great emphasis on the fact that, when the Deans conveyed the properties to the corporation, "the Deans obtain limited personal liability for any corporate obligations with respect to the properties." The record, however, does not fully support this contention. The tax court transcript of proceedings reveals that Mercantile Safe Deposit and Trust, the construction and permanent lender to the corporation, required individual guarantees from the Deans. Thus, with respect to their primary liability, the Deans were personally

stance and leads to unjust results. It is a settled rule that a court should not extend a taxing statute beyond the "clear import of the language used." *Comptroller v. John C. Louis Co.*, 285 Md. 527, 539, 404 A.2d 1045, 1053 (1979). As we went on to state in that opinion (*ibid.*): "In case of doubt, tax statutes are construed 'most strongly against the government, and in favor of the citizen.'" *See Comptroller of the Treasury v. Mandel Re–Election Comm.*, 280 Md. 575, 580, 374 A.2d 1130, 1132 (1977); *Comptroller of the Treasury v. M.E. Rockhill, Inc.*, 205 Md. 226, 234, 107 A.2d 93, 98 (1954); *Magruder v. Hospelhorn*, 173 Md. 62, 72, 194 A. 839, 844 (1937). *See also Gould v. Gould*, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211 (1917).

It is also a long-established principle that, whenever possible, tax statutes should not be construed and applied so as to result in double taxation. *See, e.g., Maass v. Higgins*, 312 U.S. 443, 449, 61 S.Ct. 631, 634, 85 L.Ed. 940 (1941) ("if it [double taxation] had been intended, Congress unequivocally would have so declared"); *United States v. Supplee– Biddle Hardware Co.*, 265 U.S. 189, 195–196, 44 S.Ct. 546, 548, 68 L.Ed. 970 (1924) ("The result of the construction put by the Government ... would be to impose a double tax.... Such a duplication, even in an exigent war tax measure, is to be avoided, unless required by express words"); *State of Tennessee v. Whitworth*, 117 U.S. 129, 137, 6 S.Ct. 645, 647, 29 L.Ed. 833 (1886) ("Double taxation is, however, never to be presumed.... Sometimes tax laws have that effect, but if they do it is because the legislature has unmistakably so enacted. All presumptions are against such an imposition"); *Co. Com'rs v. Far. & Mech. Nat. B'k.*, 48 Md. 117, 121 (1878); *State v. Sterling*, 20 Md. 502, 520 (1864); *Forman v. Commissioner of Internal Revenue*, 199 F.2d 881, 883 (9th Cir.1952); *Estate of Rose*, 465 Pa. 53, 348 A.2d 113, 118 (1975); 3A *Sutherland Statutory Construction* § 66.01, at 288 (N. Singer 4th ed. 1986). *See also Wilkens*

---

liable and did not enjoy the benefits of limited personal liability generally enjoyed by shareholders of a corporation.

*Co. v. Baltimore City,* 103 Md. 293, 312–313, 63 A. 562 (1906). The present case involves one overall transaction of the Deans purchasing property and arranging for its improvement, all during the first half of 1984. Substantial transfer and recordation taxes were paid, based upon the actual consideration of $305,000. It is unreasonable to discern a legislative purpose that this transaction be taxed twice. The "actual consideration paid" upon the transfer was $305,000 and not $610,000.

The majority's mechanical application of the statutes could lead to absurd results. For example, the majority's rationale applies equally to the situation where a married couple holds property as tenants in common and later conveys the property to themselves as tenants by the entirety. As in the instant case, the parties would not be merely transferring the property to themselves as individuals but would be transferring it to a somewhat distinct legal entity, the marital unit. As pointed out by Judge Cole for the Court in *Beall v. Beall,* 291 Md. 224, 234, 434 A.2d 1015 (1981), when a husband and wife signed an agreement as tenants by the entirety, they signed "not in their purely individual capacities but as a team." *See, e.g., Arbesman v. Winer,* 298 Md. 282, 292, 468 A.2d 633, 638 (1983) (they "hold by the entirety and not by the moieties"); *State v. Friedman,* 283 Md. 701, 705, 393 A.2d 1356, 1358 (1978); *Picking v. Yates,* 265 Md. 1, 2, 288 A.2d 146, 147 (1972) ("they hold *per tout et non per my* "); *Brewer v. Bowersox,* 92 Md. 567, 572–573, 48 A. 1060, 1062–1063 (1901); *McCubbin v. Stanford,* 85 Md. 378, 390, 37 A. 214 (1897). *See also* 4 *Thompson on Real Property* § 1784, at 52–55 (1961). Each would be obtaining a degree of limited liability. *See Lake v. Callis,* 202 Md. 581, 588, 97 A.2d 316, 319 (1953); *Keen v. Keen,* 191 Md. 31, 37, 60 A.2d 200, 204 (1948); *Jordan v. Reynolds,* 105 Md. 288, 294, 66 A. 37, 38 (1907). Therefore, under the majority's analysis, a conveyance by two tenants in common to themselves as tenants by the entirety would be taxable as a transfer from two individuals to a separate legal entity.

I would look to the substance rather than the form of the transaction and would hold that, under the circumstances of this case, the corporation's acquisition of the property was not a second taxable transfer.

Judges COLE and ADKINS have authorized me to state that they concur with the views expressed herein.